Present:  Carrico, C.J., Lacy, Keenan, Koontz, Kinser and
Lemons, JJ., and Compton, S.J.

FRANK SHOP, INC.

v.  Record No. 000216        OPINION BY JUSTICE DONALD W. LEMONS
                                    January 12, 2001
CROWN CENTRAL PETROLEUM CORPORATION

FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

In this appeal involving the Virginia Petroleum Products
Franchise Act, Code §§ 59.1-21.8 through –21.18.1 ("the Act"),
we consider whether a gasoline service station presently owned
by Crown Central Petroleum Corporation ("Crown"), located less
than one and one-half miles from a station owned by Exxon
U.S.A. and leased by Frank Shop, Inc. ("Frank Shop"), is
protected by the "grandfather clause" of the Act, Code § 59.1-
21.16:2(E).  Because we hold that the trial court erred in the
admission of certain documentary evidence and that the
exclusion of such evidence results in a failure of proof
concerning Crown's entitlement to protection under the
"grandfather clause," we will reverse the judgment of the
trial court and remand for further proceedings.

I.  Facts and Proceedings

On March 16, 1999, Frank Shop filed a bill of complaint
against Crown seeking injunctive relief and damages pursuant
to the Act.  Specifically, Frank Shop contended that Crown was
a refiner and operated a service station less than one and

one-half miles from Frank Shop's service station in violation of Code § 59.1-21.16:2.

At trial, the evidence revealed that Frank Shop owns and operates a "Retail outlet," as that term is defined by Code § 59.1-21.10. Frank Melton ("Melton"), president of Frank Shop, testified that Frank Shop had leased this retail outlet from Exxon and conducted its business pursuant to a franchise agreement with Exxon for over 11 years.

On July 1, 1979, the real property known as 6715 Staples Mill Road in Henrico County ("Property"), was owned by Charm Stations, Inc. The trial court received into evidence a copy of a form filed by Eastates Petroleum Company, Inc. ("Eastates"), on August 23, 1979, with the Virginia Department of Agriculture and Consumer Services ("VDACS") "in accordance with the requirements of Section 59.1-21.16:2 of the Code of Virginia and the Rules and Regulations for the Enforcement of the Virginia Petroleum Products Franchise Act" indicating that Eastates was the "Producer/Refiner Operator" of the retail outlet on the Property. Later, on April 30, 1991, the Property was purchased by Fast Fare, Inc., a wholly-owned subsidiary or affiliate of Crown. On October 5, 1998, Crown began construction of a "Retail outlet," as that term is defined by Code § 59.1-21.10, on the Property. In February of 1999, Crown began selling petroleum products to the general

2

public at this location.  Crown admitted that its retail outlet is located directly across the street from and less than one and one-half miles from Frank Shop's location.

The trial court held that the Property was protected by the "grandfather clause" in Code § 59.1-21.16:2(E) and entered judgment in favor of Crown.  On appeal, Frank Shop maintains that the trial court erred in the admission of certain documents and that the evidence was insufficient to sustain the judgment in favor of Crown.

## II.  Divorcement Clause and Grandfather Clause

Code § 59.1-21.16:2(A), referred to as the "divorcement clause," "prohibits a producer or refiner of petroleum products from operating a retail gasoline outlet within one and one-half miles of a retail outlet operated by a franchised dealer."  Beach Robo, Inc. v. Crown Cent. Petroleum Corp., 236 Va. 131, 132, 372 S.E.2d 144, 145 (1988).  However, Code § 59.1-21.16:2(E), referred to as the "grandfather clause," states that the "provisions of this section shall not be applicable to retail outlets operated by producers or refiners on July 1, 1979."

The parties agree that one of the issues on appeal concerns the meaning of the word "operated" in the "grandfather clause."  Frank Shop maintains that the term must be interpreted by utilizing the language of a different

section of the Act, namely Code § 59.1-21.10.  This section defines "[o]peration of a retail outlet" as "the ownership or option to buy a properly zoned parcel of property for which a permit to build a retail outlet has been granted."  Utilizing its interpretation, Frank Shop contends that Crown has not proved that, on July 1, 1979, a producer or refiner owned or had an option to purchase the Property; consequently, a retail outlet was not "operated" on the Property on July 1, 1979 and the "grandfather clause" does not apply.  Crown maintains that our prior opinions and the opinions of the Attorney General do not require ownership or an option to purchase the premises as a definitive factor in the interpretation of the word, "operated," in the "grandfather clause."  Irrespective of the definition of "operated," Frank Shop maintains that, in order to benefit from the "grandfather clause," a producer or refiner must have been the operator on July 1, 1979.  Our resolution of the evidentiary issues presented on appeal makes it unnecessary to address the definition of "operated" in the "grandfather clause."

III.  Admission and Sufficiency of Evidence

Over Frank Shop's objection, the trial court received into evidence a form filed by Eastates on August 23, 1979 with the Virginia Department of Agriculture and Consumer Services ("Exhibit 1"), and a portion of a Form 10-K for the year ended

4

September 30, 1979, filed by Ashland Oil, Inc. with the Securities and Exchange Commission ("Exhibit 2").  Assuming without deciding that Eastates "operated" a retail outlet on the premises on July 1, 1979, in order to obtain the protection of the "grandfather clause," Crown bore the burden of proof to show that Eastates was a producer or refiner as defined in the Act.[1]  A review of the record indicates that these two exhibits constitute the only evidence offered by Crown to prove that Eastates was a producer or refiner.

## A.  Exhibit 1

At trial, Crown offered Exhibit 1 into evidence as a government record under Code § 8.01-390.  Frank Shop objected on the grounds that it had not been properly authenticated, it was hearsay, and that it was not a government or public record.  Crown responded that the document was properly authenticated and counsel stated, "I can give you four reasons why it comes under the hearsay exception."  Without awaiting a statement of the four reasons or a response to the objection concerning authentication, the trial court stated, "Well, let me just help you out.  I'm going to allow it."  On appeal, Crown argues that Exhibit 1 was properly authenticated and admissible either under the government records exception

---

[1] Code § 59.1-21.10 defines "Refiner" as "any person engaged in the refining of crude oil to produce motor fuel and

5

pursuant to Code § 8.01-390 or under the business records

exception to the hearsay rule.

Government Records Exception

Code § 8.01-390(A),[2] as it existed when this matter was

heard in the trial court, stated:

> Copies of records of this Commonwealth, of
> another state, of the United States, of another
> country, or any political subdivision or agency
> of the same, other than those located in a
> clerk's office of a court, shall be received as
> prima facie evidence provided that such copies
> are authenticated to be true copies both by the
> custodian thereof and by the person to whom the
> custodian reports.

This Code section embodies what is often referred to as

the government records exception to the hearsay rule.

Pursuant to this statutory exception to the hearsay rule,

> records and reports prepared by public
> officials pursuant to a duty imposed by
> statute, or required by the nature of their
> offices, are admissible as proof of the facts
> stated therein.  Although a record or report
> may qualify as a public document, the hearsay
> objection is overcome only if the document
> relates facts or events within the personal
> knowledge and observation of the recording
> official to which he could testify should he be
> called as a witness.

---

includes any affiliate of such person."
    [2] The 2000 amendment to this section substituted "either
by the custodian thereof or by" for "both by the custodian
thereof and" and added "if they are different" to the end of
that sentence.

6

<u>Taylor v. Maritime Overseas Corp.</u>, 224 Va. 562, 565, 299 S.E.2d 340, 341 (1983)(citations and internal quotations omitted).

It is abundantly clear that Exhibit 1 was not prepared by a public official and does not reflect facts or events within the personal knowledge and observation of the recording official. Exhibit 1 was prepared by a representative of Eastates and filed with the Virginia Department of Agriculture and Consumer Services. Accordingly, Exhibit 1 was not admissible under Code § 8.01-390.

Business Records Exception

On appeal, Crown maintains that Exhibit 1 was nonetheless admissible under the business records exception to the hearsay rule, sometimes called the "modern Shopbook Rule." We have previously noted:

> Under the modern Shopbook Rule, adopted in Virginia, verified regular entries may be admitted into evidence without requiring proof from the regular observers or record keepers, generally limiting admission of such evidence to facts or events within the personal knowledge of the recorder. However this principle does not necessarily exclude all entries made by persons without personal knowledge of the facts recorded; in many cases, practical necessity requires the admission of written factual evidence that has a circumstantial guarantee of trustworthiness.
>
> The trustworthiness or reliability of the records is guaranteed by the regularity of their preparation and the fact that the records are relied upon in the transaction of business by the

person or entities for which they are kept.
Admission of such evidence is conditioned,
therefore, on proof that the document comes from
the proper custodian and that it is a record kept
in the ordinary course of business made
contemporaneously with the event by persons
having the duty to keep a true record.  This
approach necessarily requires that a
determination as to admissibility be made on the
facts of each case.

Kettler & Scott, Inc. v. Earth Technology Companies, Inc., 248

Va. 450, 457, 449 S.E.2d 782, 785-86 (1994) (citations and

internal quotations omitted).

Affidavits from the government custodian of this record

established that Exhibit 1 was a "true and correct copy of

documents held by the Office of Product and Industry

Standards."  Because the document was not generated by the

Office of Product and Industry Standards or any entity that

could be described as its affiliate, the document is not a

business record of the Office of Product and Industry

Standards.  As we stated in Ford Motor Company v. Phelps, 239

Va. 272, 276, 389 S.E.2d 454, 457 (1990), "the rule deals with

records made, and not merely kept, in the regular course of

business."

The trial court erred in admitting Exhibit 1 into

evidence.  It is not an official record subject to exception

from the hearsay rule under Code § 8.01-390, nor is it a

8

business record of the Office of Product and Industry Standards.

## B. Exhibit 2

At trial, Crown offered a portion of a Form 10-K into evidence as Exhibit 2 and simultaneously tendered to the trial court the entire Form 10-K. With respect to the entire Form 10-K, apparently filed by Ashland Oil, Inc. with the Securities and Exchange Commission in 1979, counsel stated, "I'm not submitting this as evidence, but for your Honor's — the Court's convenience." Crown asserted that Exhibit 2 was a business record, a public record, and an ancient document, and thus admissible under one or more of these exceptions from exclusion under the hearsay rule. Frank Shop objected to Exhibit 2 on the grounds that it was not an ancient document or a public record, and it was not properly authenticated.

Analysis of authentication and admissibility of Exhibit 2 is unnecessary because, even if properly admitted, it fails to support the proposition for which it was offered. Although Exhibit 2 confirms that Eastates was a subsidiary of Ashland Oil during the period of the filing, the brief excerpts from the form admitted into evidence as Exhibit 2 do not even suggest, much less prove, that Ashland Oil or Eastates was a producer or refiner as defined under the Act.

In this case, the only evidence before the trial court of Eastates' status as a producer or refiner on July 1, 1979 was Exhibit 1, which was admitted in error, and Exhibit 2 which fails in its evidentiary purpose. The evidence was therefore insufficient to sustain Crown's burden of proof that its predecessor, Eastates, qualified under the "grandfather clause" for exclusion from the "divorcement clause."

## IV. Conclusion

There is no controversy over whether Frank Shop sustained its burden of proof by establishing that Crown operates a gasoline service station at a location less than one and one-half miles from Frank Shop's location in violation of the "divorcement clause" of the Act. We hold that Crown failed to prove that it was entitled to protection under the "grandfather clause" of the Act. In its bill of complaint, Frank Shop requested (1) a temporary and permanent injunction; (2) liquidated damages of $2500; (3) such provable damages as may be established by the evidence and interest thereon; (4) reasonable attorneys' fees; (5) costs incurred; and, (6) "such other and further relief as is determined to be appropriate." We will reverse the judgment of the trial court and remand for determination of the relief to which Frank Shop may be entitled.

Reversed and remanded.