Present:  All the Justices

DECIPHER, INC.

v.  Record No. 002873     OPINION BY JUSTICE ELIZABETH B. LACY
                                      November 2, 2001
iTRiBE, INC.

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Leonard B. Sachs, Judge Designate

This is an appeal of the trial court's holding that
Decipher, Inc. (Decipher) failed to carry its burden of proof
in its breach of contract counterclaim against iTRiBE, Inc.
(iTRiBE).  Because we conclude that there was no reversible
error in the judgment complained of, we will affirm the
judgment of the trial court.

iTRiBE is in the business of providing access to the
Internet as a "tier 2" provider.  A tier 2 provider does not
have direct access to the Internet and must contract with an
upstream entity having such access, a "tier 1" provider, to
complete the link to the Internet.  The amount of Internet
access available is measured in terms of megabytes of
bandwidth.  Prior to February 1997, iTRiBE had only a three
megabyte (Mb) Internet connection with its tier 1 provider to
service all its customers, including Decipher, which
contracted for 1.5 Mb of connectivity through iTRiBE.

In February 1997, Decipher and iTRiBE executed a new
five-year contract under which iTRiBE agreed to provide

Decipher 5 Mb of bandwidth for Decipher's connection to the Internet.  The contract also provided that iTRiBE would "install a DS3 for this."  A DS3 is a specific type of connection that can provide from 3 Mb to a maximum of 49 Mb of bandwidth connectivity depending on its configuration. iTRiBE, however, achieved its connection with a tier 1 provider through a different type of connector and did not install a DS3.  iTRiBE contracted with Digex, a tier 1 provider, for a 10 Mb bandwidth connection to the Internet.

In June 1998, Decipher decided to change its Internet connection and contract directly with a tier 1 provider.  In August 1998, Decipher signed a three-year contract with MCI Telecommunications Corporation for a 6 Mb bandwidth Internet connection.  In December 1998, Decipher informed iTRiBE by letter that it was canceling its February 1997 contract with iTRiBE.  After describing Decipher's growth since entering the contract, the letter stated that "connectivity once suitable . . . no longer provides . . . the solution [needed] . . . to continue to . . . expand."  As to iTRiBE's performance, the letter stated "[i]n the past we have experienced repeated outages, poor performance due to shared media as well as slow throughput once connected to Digex."

iTRiBE sued Decipher for breach of contract when Decipher refused to pay the liquidated damages specified in the

2

contract. In response, Decipher filed a grounds of defense and counterclaim asserting that iTRiBE had breached the contract because it had not provided Decipher with the 5 Mb of Internet connectivity required by the contract. Following an ore tenus hearing, the trial court issued an opinion letter holding that "Decipher has failed to prove that they did not receive the 5 Mb that they bargained for." The trial court subsequently entered judgment in favor of iTRiBE on its breach of contract claim and against Decipher on its breach of contract counterclaim.

## I.

On appeal, Decipher raises three assignments of error. First, Decipher asserts that the trial court's judgment allowing iTRiBE to recover for breach of contract was based on the erroneous finding that a Decipher witness "conceded" that iTRiBE's failure to install a DS3 was not a breach of a material condition of the contract. There is nothing in the opinion letter to support Decipher's contention that the trial court concluded that Decipher conceded the issue of materiality.

The failure of iTRiBE to install a DS3 was a breach of the contract terms; however, if this breach did not go to the "root of the contract," the contract condition was not material and the breach of that condition would not preclude

3

iTRiBE from enforcing the contract. <u>Horton v. Horton</u>, 254 Va. 111, 115, 487 S.E.2d 200, 203 (1997). Neither the trial court's order nor opinion letter specifically addressed whether installation of a DS3 was a material provision of the contract. However, because the trial court entered judgment in favor of iTRiBE, the trial court necessarily concluded that the provision was not a material provision and, therefore, that the failure to install the DS3 did not preclude recovery by iTRiBE.

In its opinion letter, the trial court stated that, as a matter of fact, the contract was "understood" by the parties' representatives who negotiated it "in the context of the requirements" of each party. The parties agreed that iTRiBE would have to increase its upstream connectivity in order to meet Decipher's 5 Mb requirements. The parties to the contract also knew that iTRiBE had other customers. But, as the trial court noted in its opinion letter, Decipher's representative never "in [his] wildest dreams" thought Decipher "would require 45 Mb," the customary bandwidth implied by the term DS3, according to industry standards. These findings support the conclusion that the parties considered the root of the contract to be the provision of 5 Mb of Internet connectivity and thus the specific installation

4

of a DS3 with a 45 Mb capacity was not a material element of the contract.

In light of the evidence presented regarding the nature of the contract between iTRiBE and Decipher, the statement of Decipher's representative, recited by the trial court in its opinion letter, does not support Decipher's contention that the trial court found that its representative "conceded" that iTRiBE's failure to install a DS3 was not a material element of the contract.  Instead, it is clear the trial court's conclusion was based on a finding that the evidence as a whole showed that the requirement to install a DS3 was not a material condition of the contract.

Accordingly, we reject Decipher's assertion that the trial court based its holding on a finding that Decipher's representative conceded that iTRiBE's failure to install a DS3 was a breach of a material condition of the contract.

## II.

In its second assignment of error, Decipher asserts that the trial court erred as a matter of law "by holding that Decipher breached its contract with iTRiBE . . . by not performing specific tests on its and iTRiBE's computer hardware prior to terminating its contract with iTRiBE."  Once again, neither the trial court's opinion letter nor its order recites such a holding.

5

To sustain its counterclaim, Decipher had to produce evidence sufficient to establish that it did not receive 5 Mb of bandwidth from iTRiBE.  There is no direct evidence in the record by way of reports, testimony, or other similar documentation to support Decipher's claim.  Rather, Decipher's proof, as emphasized by its counsel at oral argument, was completely circumstantial.

To support its theory that it did not receive the requisite bandwidth connectivity from iTRiBE, Decipher introduced evidence that iTRiBE's router did not have the capacity to provide Decipher's 5 Mb and that iTRiBE had "oversold" its 10 Mb connectivity capacity with Digex.  iTRiBE introduced controverting expert testimony regarding the capacity and operation of its router.  iTRiBE also presented evidence that the total amount of Internet connectivity it sold has no impact on iTRiBE's operations unless the evidence showed that the amount of connectivity sold was greater than the amount of connectivity in use at any one time.  Furthermore, iTRiBE argued that neither of Decipher's claims established that Decipher did not receive its 5 Mb of bandwidth connectivity from iTRiBE.

In considering Decipher's evidence in support of its claims, the trial court stated in its opinion letter:

I further find as a fact Decipher has failed to prove that they did not receive the 5 Mb that they bargained for. One of Decipher's witnesses conceded that there was software available at a cost of approximately $500.00 which Decipher could have installed to constantly monitor the drawdowns that they were receiving at any given time or in the alternative they could have contracted with Bell Atlantic to hire engineers and metering equipment for not more than $2,000.00 to accomplish the same purpose.

Neither this statement nor anything else in the opinion letter supports the proposition advanced by Decipher that the trial court considered the failure to test equipment prior to termination a breach of contract. Rather, the failure to test was one of the reasons Decipher was unable to produce evidence to show that iTRiBE failed to provide 5 Mb bandwidth. The trial court concluded that Decipher did not meet its burden of proof because "all of the defendant's evidence was hypothetical evidence."

Accordingly, we reject Decipher's claim that the trial court held that Decipher breached the contract because it did not perform equipment tests prior to terminating the contract.

## III.

Finally, Decipher complains that the trial judge erred in allowing one of its witnesses to testify on cross-examination regarding reports received by iTRiBE from Digex. While we conclude that the trial court erred in ruling that certain testimony would be admitted under the business records

7

exception to the hearsay rule, we hold that the error was harmless.

Digex provided iTRiBE with periodic reports reflecting the amount of bandwidth iTRiBE used on Digex's system. However, only one report, covering the period of June 29, 1997 through July 5, 1997, was produced at trial. One of Decipher's witnesses, a former iTRiBE employee, testified on cross-examination that the produced report showed that all iTRiBE's customers including Decipher consumed less than 25 percent of iTRiBE's 10 Mb connection during that period.[*] When the former employee was asked whether any of the unproduced reports through October 1997 indicated that iTRiBE had used 5 Mb of bandwidth, Decipher objected on the basis of hearsay. The trial court overruled the objection, stating that the unproduced reports were "regular course of business under the exception rule." This was error.

The hearsay exception does not generally cover items received by a business. See, e.g., Frank Shop, Inc. v. Crown Central Petroleum, 261 Va. 169, 176, 540 S.E.2d 897, 901 (2001); Ford Motor Company v. Phelps, 239 Va. 272, 276, 389 S.E.2d 454, 457 (1990)("[T]he rule deals with records made, and not merely kept, in the regular course of business.").

Hence the unproduced reports would not, on the foundation presented here, have been admissible even if tendered as exhibits. In this case, however, the unproduced reports were not offered as exhibits at trial. Instead, the witness was invited to recount the substance of their contents. Generally, the hearsay rule precludes a witness from quoting from, or summarizing the contents of, even admissible records until they have been received in evidence. Hence, the hearsay objection made by Decipher to this question should have been sustained.

The trial court's error, however, was harmless: after the ruling, the witness never characterized the contents of the unproduced reports. The remaining cross-examination related to the effect of bandwidth usage information on the decision to seek greater Internet access. "The hearsay rule does not operate to exclude evidence of a statement, request, or message offered for the mere purpose of explaining or throwing light on the conduct of the person to whom it was made." Fuller v. Commonwealth, 201 Va. 724, 729, 113 S.E.2d 667, 670 (1960). Therefore, even though the trial court improperly overruled Decipher's objection to the initial

---

\* This report was not admitted in evidence and the propriety of testimony regarding the report is not at issue in this appeal.

question, that ruling did not result in inadmissible hearsay evidence and, therefore, was harmless.

Furthermore, "[a] plaintiff in error must always show, not only error in the rulings of the trial court, but also error of a substantial nature." Breeding v. Johnson, 208 Va. 652, 659, 159 S.E.2d 836, 842 (1968). Nothing in the record indicates that the trial judge relied upon the testimony regarding these unproduced reports in reaching its decision, even according to Decipher's view of the case. Indeed, Decipher states without qualification that the trial judge's decision was based "on two grounds." First, that a Decipher representative "conceded" that the failure to purchase a DS3 was not a material breach of the contract and, second, that Decipher should have conducted equipment tests prior to terminating its contract with iTRiBE. As discussed above, neither of these alleged holdings was, in fact, the basis for the finding of the trial court. Therefore, Decipher cannot claim it was prejudiced by admission of evidence which Decipher itself does not contend was the basis for any holding of the trial court.

Accordingly, for the reasons stated, the judgment of the trial court will be affirmed.

Affirmed.

10