PRESENT: Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and Agee, JJ., and Russell, S.J.

1924 LEONARD ROAD, L.L.C.

v. Record No. 052526    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                                       November 3, 2006
DOROTHY VAN ROEKEL, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Gaylord L. Finch, Jr., Judge

This appeal arises from the circuit court's holding that a resulting trust was established in favor of an alleged widow of a previous co-tenant of certain real property. We consider various evidentiary issues decided by the circuit court, including (1) an application of Code § 8.01-397, commonly known as the "dead man's statute," (2) the exclusion of several documents purportedly failing to qualify for admission under the business records exception to the hearsay rule, (3) the admission of evidence concerning the alleged widow's "understanding" of the original purchase of the property, and (4) the circuit court's failure to apply the principle of estoppel by deed. Because we hold that the circuit court erred in certain of these evidentiary rulings, and that those errors require a new trial, we do not reach the issue whether the evidence was sufficient to support the circuit court's judgment.

I.

This case began with a bill of complaint filed by 1924 Leonard Road, L.L.C. (the LLC), requesting partition of certain

real property in Fairfax County improved with a single-family dwelling (the property).  The LLC claimed that it and Dorothy E. Van Roekel (Dorothy) each owned as tenants in common a one-half undivided interest in the property.  Dorothy filed a cross-bill of complaint to quiet title, alleging she was the sole owner of the property by virtue of a resulting trust or by adverse possession.

The evidence at trial showed that Dorothy married Herman W. Van Roekel (Herman) in 1946.  Herman was employed by Francis E. Malcolm, Sr. (Malcolm), a real estate broker.  In November 1955, Malcolm wrote a letter to Captain John S. Albright (Albright), the property's owner, regarding a potential sale of the property.

In his letter, Malcolm explained that Herman and his family needed a home but that Herman was "somewhat short of ready cash" and was willing to accept the property "as is."  Malcolm asked Albright to sell the property to Herman for "no additional expense to [Herman]" other than the past due payments on the house and any transfer expenses.

Ten days later, Malcolm again wrote to Albright, informing him that Herman was willing to assume Albright's loan on the property in order to effect the sale.  Malcolm explained that because he knew Herman and was confident that Herman would make timely payments on the deed of trust, Malcolm was willing "to

take title jointly with [Herman], thereby, making [Malcolm] responsible on the financing and giving [Albright] extra protection."

Albright conveyed the property by deed (the original deed) to Malcolm and Herman, as tenants in common.  Malcolm and Herman also assumed liability for repayment of the existing mortgage on the property.

At this time, Herman and Dorothy were not living together. Herman contacted Dorothy and informed her that he had purchased a house for their family.  Herman, Dorothy, and their children moved to the property in the summer or fall of 1956.

After Dorothy moved into the house, she paid all the real estate taxes and made all the mortgage payments on the property. According to Dorothy, neither Herman nor Malcolm made any tax or mortgage payments.  In December 1961, Herman deserted his family.

In November 1962, a fire damaged the property.  Dorothy contacted Malcolm to obtain his signature for an insurance claim.  According to handwritten notes Malcolm kept, when he spoke with Dorothy a few days later, Dorothy informed him that "[Herman] went to Mexico Christmas, 1961, and hadn't been heard from since."

In December 1970, Malcolm wrote Herman a letter offering to pay him $500 for Herman's interest in the property.  In the

letter, Malcolm also asked Herman to provide information about his marital status, advising him that if he had remarried, his present wife would also need to sign any sales contract.

Herman did not respond to Malcolm's offer. According to Malcolm's notes, about one year later, when Dorothy spoke with Herman, he promised to send "papers" on the property and also mentioned that he had a "new" wife. Dorothy also asked Herman to send her "divorce papers," which Dorothy never received.

In 1972, Herman sent Dorothy a deed (the 1972 deed). The 1972 deed, which was later recorded, stated that Herman and his wife, Billie Sue Van Roekel (Billie Sue), conveyed to Dorothy an undivided one-half interest in the property. Dorothy made the final deed of trust payment on the property in 1976.

Herman died in 1984. Although Herman's death certificate listed his marital status as "divorced," Dorothy testified that she and Herman had not obtained a divorce.

Dorothy also introduced evidence purporting to show Malcolm's intent at the time he and Herman purchased the property. Over the LLC's objection, the circuit court permitted Dorothy to testify concerning her "understanding" of the reason Malcolm's name appeared as a grantee on the original deed. Dorothy stated that Malcolm was named as a grantee in the original deed in order that "[she and Herman] could buy the house. And once it got paid for, it would be [Dorothy's]."

4

In 1977, Malcolm suffered a debilitating stroke that rendered him incapable of conducting his business affairs. After his stroke, his daughter, Ann B. Malcolm (Ann), served as his attorney-in-fact. Malcolm also had established a revocable living trust (the trust), naming his wife, Wilda P. Malcolm, and his daughters, Ann and Joan M. Hottman (Joan), as trustees for the benefit of Ann, Joan, and his son, Francis E. Malcolm, Jr. (trust beneficiaries).

In 1996, Ann executed a quitclaim deed on Malcolm's behalf, conveying his one-half interest in the property to the surviving trustees of the trust, Ann and Joan (trustees). Malcolm died later that year.

In July 2003, the trust beneficiaries executed a quitclaim deed, attempting to convey their right, title, and interest in the property to the LLC. Because of an error in the deed's recitals, the LLC executed two additional quitclaim deeds (the amended deeds), the more recent of which was recorded and conveyed the interest in the property from the trustees to the trust beneficiaries and from the trust beneficiaries to the LLC.

Dorothy objected to the admission of the amended deeds. She asserted that the LLC had not timely produced the amended deeds under terms of discovery orders entered by the court. The circuit court sustained Dorothy's objection.

5

The LLC made a motion in limine, asking that the circuit court apply the principle of estoppel by deed and hold that Dorothy was estopped from claiming that she was married to Herman, or that she owned anything more than a one-half interest in the property. The LLC asserted that this principle was applicable because the 1972 deed, from which Dorothy obtained her interest in the property, listed Billie Sue as Herman's wife and stated that Herman owned only a one-half interest in the property. The circuit court denied the LLC's request.

The LLC presented evidence that Malcolm regarded his interest in the property as an investment interest. Ann explained that her parents owned many single-family homes as investment properties. She stated that her parents shared ownership of "everything," with the exception of two cemetery plots and the property. With regard to the property, Ann explained that her mother had refused to put her name on the original deed "with a thief."

After counsel asked Ann how she became aware of "this story," Dorothy raised a hearsay objection. The LLC responded that Ann would testify regarding her father's statements to her about the property, and that such testimony was admissible under the "dead man's statute" exception to the hearsay rule found in Code § 8.01-397. The circuit court sustained Dorothy's objection.

6

The LLC proffered for the record the testimony that Ann would have given in response to the LLC's question concerning Ann's knowledge of the original transaction. This proffered testimony included Ann's statements that (1) Malcolm did not agree to become liable on the property's debt based on "charitable concerns;" (2) Malcolm considered the property as part of his investment portfolio; (3) Malcolm interceded with the lender when Dorothy's account fell past due; and (4) Malcolm maintained an insurance policy on the property.

The LLC also attempted to admit as business records Exhibit 6, a series of five letters exchanged between Malcolm and the National Bank of Washington (the bank), the holder of the deed of trust on the property. The initial letter from the bank, dated May 27, 1976, notified Malcolm and Herman that the deed of trust had been paid in full. The letter also referenced enclosed checks made payable to Malcolm and Herman for overpayment of the loan and the remaining balance from the mortgage escrow account.

Malcolm responded to the bank's letter by correspondence dated July 20, 1976, and explained that the checks should be redrawn in equal amounts and made payable to Malcolm and Dorothy because Herman had conveyed his one-half interest in the property to Dorothy. Responding on July 23, 1976, the bank asked Malcolm to send a copy of the deed from Herman to Dorothy.

7

Malcolm complied by letter dated August 10, 1976.  In its August 16, 1976 letter, the bank sent Malcolm his half of the excess funds, as he had requested.  When Dorothy raised a hearsay objection to the admission of Exhibit 6, the circuit court sustained Dorothy's objection.

After hearing all the evidence, the circuit court issued a letter opinion holding that clear and convincing evidence supported the court's conclusion that Dorothy was the sole owner of the property by virtue of a resulting trust.  The circuit court determined that Malcolm's letters to Albright at the time of the sale provided a "clear indication" that Malcolm took title to facilitate the sale as an "accommodation" to Herman.  The circuit court also concluded that Dorothy's interest derived from either the 1972 deed or, because "no evidence of a divorce was ever produced," from Dorothy's interest as Herman's widow.  The circuit court did not address Dorothy's claim of adverse possession.  The court entered a final decree incorporating the letter opinion and dismissing the LLC's bill of complaint.  This appeal followed.

## II.

Initially, we observe that the circuit court made the contested evidentiary rulings in the context of Dorothy's cross-bill seeking a resulting trust.  Therefore, although we do not reach the issue of the sufficiency of the evidence in support of

8

the court's holding, we state basic principles relevant to the circuit court's consideration of Dorothy's claim.

A resulting trust is an indirect trust that arises from the parties' intent or from the nature of the transaction and does not require an express declaration of trust. Tiller v. Owen, 243 Va. 176, 180, 413 S.E.2d 51, 53 (1992); Salyer v. Salyer, 216 Va. 521, 525, 219 S.E.2d 889, 893 (1975). For a resulting trust to arise, the alleged beneficiary must pay for the property, or assume payment of all or part of the purchase money before or at the time of purchase, and have legal title conveyed to another without any mention of a trust in the conveyance. Morris v. Morris, 248 Va. 590, 593, 449 S.E.2d 816, 818 (1994); Tiller, 243 Va. at 180, 413 S.E.2d at 53; Leonard v. Counts, 221 Va. 582, 588, 272 S.E.2d 190, 194 (1980). The alleged beneficiary also must have paid the purchase money as his own, and not as an agent or lender of the title holder. Morris, 248 Va. at 593, 449 S.E.2d at 818; Tiller, 243 Va. at 180, 413 S.E.2d at 53; Salyer, 216 Va. at 526, 219 S.E.2d at 893.

A resulting trust can only arise from the parties' original transaction, at the time that transaction occurs, and at no other time. Morris, 248 Va. at 594, 449 S.E.2d at 818; see Ogden v. Halliday, 235 Va. 639, 642, 369 S.E.2d 417, 419 (1988). Finally, because a resulting trust generally contravenes the express language of a written document, a party seeking to

9

establish such a trust must do so by clear and convincing evidence. Gifford v. Dennis, 230 Va. 193, 197-98, 335 S.E.2d 371, 373 (1985); Leonard, 221 Va. at 589, 272 S.E.2d at 195.

### A. "Dead Man's Statute"

We first consider the LLC's argument that the circuit court erred in refusing to apply the "dead man's statute" exception to the hearsay rule found in Code § 8.01-397. The LLC argues that pursuant to this exception, the circuit court should have permitted Ann to testify about statements Malcolm made concerning his acquisition of the property and should have admitted into evidence Exhibit 6, the series of letters between Malcolm and the bank. In support of its argument, the LLC relies on our decision in Nicholson v. Shockey, 192 Va. 270, 64 S.E.2d 813 (1951), contending that the "dead man's statute" permitted admission of the LLC's proffered evidence because Dorothy's cross-bill was in effect an action against Malcolm's estate. We disagree with the LLC's argument.

The hearsay exception provided in Code § 8.01-397 is plain and unambiguous. Therefore, we are bound by the plain meaning of that language and apply the statute as written. See Alcoy v. Valley Nursing Homes, Inc., 272 Va. 37, 41, 630 S.E.2d 301, 303 (2006); Williams v. Commonwealth, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003); Woods v. Mendez, 265 Va. 68, 74-75, 574 S.E.2d 263, 266 (2003). The statute provides, in relevant part:

> In an action by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony. In any such action . . . all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence in all proceedings.

Code § 8.01-397.

By its terms, this statutory language does not apply to the LLC. The LLC received its interest in the property through a quitclaim deed from Malcolm's trustees. The LLC, a limited liability company created under authority of the Virginia Limited Liability Company Act, Code §§ 13.1-1000 through -1080, is a distinct entity that bore no legal relationship to Malcolm's trust or estate. The LLC also is an entity separate from its members. See Hagan v. Adams Prop. Assocs., Inc., 253 Va. 217, 220, 482 S.E.2d 805, 807 (1997).

The LLC's separate legal identity distinguishes the facts of the present case from those presented in Nicholson, in which we applied a provision contained in the "dead man's statute." There, a son claimed title to funds by virtue of a gift from his deceased mother made during her lifetime. The son's siblings alleged that their mother's transfer to the son was the result of undue influence he exercised while acting as her attorney-in-fact. Id. at 274, 64 S.E.2d at 815-16. The siblings asked that

11

the circuit court declare the funds at issue an asset of the mother's estate.  Id. at 274, 64 S.E.2d at 816.

We held that although the son had not initiated the suit against his mother's estate or personal representative, the son effectively had proceeded against her estate by asserting that the disputed funds belonged to him, rather than to the estate, as his siblings claimed.  Id. at 283, 64 S.E.2d at 821. Therefore, we applied a provision of the "dead man's statute," and held that the decree was erroneously entered in favor of the son based on the son's uncorroborated testimony.[1]  Id.

In contrast, the "dead man's statute" is inapplicable here because the present litigation involving the LLC is not effectively a proceeding brought by or against Malcolm's estate or trust.  Therefore, the LLC was not entitled to claim the benefit of the hearsay exception in the "dead man's statute," and the circuit court did not err in concluding that the proffered evidence was inadmissible under Code § 8.01-397.

B. Business Records Exception

The LLC argues that the letters comprising Exhibit 6 were alternatively admissible under the business records exception to the hearsay rule, and that the circuit court erred in sustaining

_____

[1]At that time, we applied former Code § 8-286, the predecessor statute of Code § 8.01-397, which contained essentially the same provision prohibiting entry of a decree based on the uncorroborated testimony of an adverse or interested party.

12

Dorothy's objection to their admission on this basis.  The LLC asserts that Ann's testimony established the foundation for the admission of these documents because she had been the custodian of her father's business records since his stroke in 1977.

In response, Dorothy asserts that letters comprising Exhibit 6 were not verified regular business entries as required under the business records exception.  She contends that the LLC failed to establish an adequate foundation for the admission of these documents because the LLC did not demonstrate that the records "were entries made in the course of business, rather than old papers maintained in a file."[2]  We disagree with Dorothy's arguments.

In Virginia, the business records exception to the hearsay rule, also referred to as the "modern shop book rule," permits the admission of verified regular entries of a business provided that such evidence has a direct or circumstantial guarantee of trustworthiness.  Frank Shop, Inc. v. Crown Central Petroleum, 261 Va. 169, 175, 540 S.E.2d 897, 901 (2001); Kettler & Scott, Inc. v. Earth Technology Companies, Inc., 248 Va. 450, 457, 449 S.E.2d 782, 785 (1994); "Automatic" Sprinkler Corp. of America v. Coley & Petersen, Inc., 219 Va. 781, 792, 250 S.E.2d 765, 773 (1979); Frye v. Commonwealth, 231 Va. 370, 387, 345 S.E.2d 267,

_____
[2] Dorothy did not object to Exhibit 6 at trial on the grounds of relevance, nor does she raise that argument in this appeal.

13

279-80 (1986). We have further explained that the trustworthiness or reliability of such records is guaranteed by the fact that they are regularly prepared and relied on in the conduct of business by the persons or entities for which the records are kept. Frank Shop, 261 Va. at 175, 540 S.E.2d at 901; Kettler & Scott, 248 Va. at 457, 449 S.E.2d at 785-86; Marefield Meadows, Inc. v. Lorenz, 245 Va. 255, 264, 427 S.E.2d 363, 368 (1993). Therefore, to be admissible as a business record, a document must be produced by its proper custodian, be a record kept in the ordinary course of business, and be made at the time of an event by a person having a duty to keep a true record of that event. Frank Shop, 261 Va. at 175-76, 540 S.E.2d at 901; Kettler & Scott, 248 Va. at 457, 449 S.E.2d at 786; "Automatic" Sprinkler, 219 Va. at 793, 250 S.E.2d at 773; Marefield Meadows, 245 Va. at 264, 427 S.E.2d at 368; Ashley v. Commonwealth, 220 Va. 705, 707-08, 261 S.E.2d 323, 324-25 (1980).

Here, the LLC presented testimony from Ann establishing that she had worked in her father's office for several years when he was alive, had helped maintain the records there, and was familiar with the manner in which her father conducted his various businesses. She also stated that she had been the custodian of her father's business records since his stroke in

14

1977, and that she continued to maintain those records in the same filing cabinets and file folders used by her father.

Ann explained that her father kept carbon copies of all typed letters that he generated in the course of his property management business. She stated that he maintained his records on a "by property basis," and that he kept notes on all transactions concerning those properties. These properties included the 10 single-family homes that Malcolm and his wife owned, as well as between 15 and 20 homes that Malcolm "managed."

Ann stated that her father also maintained records involving the "payoff" of mortgages on his properties. She related that Malcolm would take such action as necessary to ensure that "the payoff of any note" was properly recorded.

We hold that Ann's testimony provided a sufficient foundation for admission of the letters Malcolm wrote that were part of Exhibit 6.[3] The reliability of those records was guaranteed by the fact that the documents were regularly

---

[3] In addition to challenging the foundation for Exhibit 6, Dorothy raised an objection that the August 10, 1976 letter from Malcolm to the bank, which was part of Exhibit 6, was inadmissible because the LLC did not properly produce this letter in discovery. The circuit court sustained this objection. However, the LLC has not assigned error to the circuit court's ruling that the August 10, 1976 letter was inadmissible because it was not timely produced in discovery. Thus, the circuit court's exclusion of the August 10, 1976 letter based on the LLC's discovery violation precludes its admission on retrial of this case.

prepared in the ordinary course of business, having been made as part of the loan "payoff" transactions described in the correspondence, and that Malcolm relied on them in the conduct of his property management business.

We also hold that the correspondence Malcolm received from the bank was admissible as Malcolm's business records. We initially recognize that the business records exception generally does not apply to records merely received by a business. Decipher, Inc. v. iTRiBE, Inc., 262 Va. 588, 595, 553 S.E.2d 718, 721 (2001); see Ford Motor Co. v. Phelps, 239 Va. 272, 276, 389 S.E.2d 454, 457 (1990). However, our consideration of this general rule does not conclude our analysis.

The central consideration in a business records exception analysis is whether the records demonstrate reliability and trustworthiness. Here, although Malcolm did not generate the letters from the bank, those letters were part of a series of correspondence between Malcolm and the bank discussing the mortgage "payoff." The reciprocal nature of these communications demonstrates the reliability and trustworthiness of the letters from the bank. Also, Malcolm kept the letters from the bank in the regular course of his business and relied on the accuracy of the information contained in the letters in order to draft his responses and collect his reimbursement

16

funds.  Thus, no additional foundation evidence was required for admission of the bank's letters to Malcolm.  See Marefield Meadows, 245 Va. at 263-64, 427 S.E.2d at 367-68; "Automatic" Sprinkler, 219 Va. at 792-94, 250 S.E.2d at 773-74.

### C. Evidence of Dorothy's "Understanding"

We next consider the LLC's argument that the circuit court erred in allowing Dorothy to testify concerning her "understanding" of the original purchase of the property.  The LLC contends that this testimony was inadmissible because Dorothy did not have personal knowledge of the transaction, and her testimony did not provide a factual basis for its admission.

In her brief, Dorothy does not address this assignment of error.  Based on our review of the record, we agree with the LLC's argument.

Dorothy's testimony regarding her "understanding" of the original transaction was not based on any personal knowledge of the transaction, or on any information she received that would have provided a basis for such testimony.  Instead, her testimony established that she did not learn of the purchase until Herman told her that he had bought a house.  Dorothy also confirmed that she did not have any contact with Malcolm at the time the property was purchased, and only spoke with him once in 1963 when she needed his signature for an insurance claim she was filing on the property.  She testified that at that time,

17

"He just asked why I was there and signed the paper and then gave it back to me."

This testimony, considered collectively, demonstrated that Dorothy lacked an opportunity for knowing the intention of the parties at the time the property was purchased, and that she did not have a basis in fact for testifying about her "understanding" of that transaction. Therefore, we hold that the circuit court erred in permitting her to testify about her purported "understanding" of the purchase. See 1 Kenneth S. Broun, McCormick on Evidence § 10 (6th ed. 2006).

### D. Estoppel by Deed

The LLC argues that the circuit court erred in overruling the LLC's motion in limine, which sought to enforce the doctrine of estoppel by deed. The LLC contends that Dorothy attempted by her evidence to contradict the clear wording of the 1972 deed from which she derived her ownership interest. Thus, the LLC maintains that Dorothy should have been estopped from claiming that she owned more than a one-half interest in the property and from asserting that she and Herman were not divorced. We disagree with the LLC's arguments.

In an action against a third party, the doctrine of estoppel by deed binds a grantor and his privies, but does not bind the grantee of a deed. As we have stated, "the doctrine of estoppel by deed provides that equity will not permit a grantor,

18

or one in privity with him, to assert anything in derogation of an instrument concerning an interest in real or personal property as against the grantee or his successors." Barris v. Keswick Homes, L.L.C., 268 Va. 67, 73, 597 S.E.2d 54, 58 (2004); accord VEPCO v. Buchwalter, 228 Va. 684, 688, 325 S.E.2d 95, 97 (1985). Here, Dorothy was the grantee, not the grantor, of the 1972 deed. Therefore, the doctrine of estoppel by deed was inapplicable under the facts presented, and we hold that the circuit court did not err in denying the LLC's motion in limine.

### E. Evidence of a Marriage

The LLC argues that the circuit court erred in determining that Dorothy and Herman were still married at the time of Herman's death. The LLC contends that Herman had married a second time and that, therefore, a presumption arose that his prior marriage to Dorothy had ended in divorce. According to the LLC, Dorothy's evidence failed to overcome that presumption. We disagree with the LLC's arguments.

The LLC incorrectly characterizes the substance of the presumption on which it relies. Under that "second marriage" presumption, when two marriages of the same person are proved, a rebuttable presumption arises that the second marriage is valid. Deryder v. Metropolitan Life Ins. Co., 206 Va. 602, 607-08, 145 S.E.2d 177, 180-81 (1965); Parker v. American Lumber Corp., 190 Va. 181, 185-86, 56 S.E.2d 214, 216 (1949).

Here, however, the LLC failed to present evidence proving that Herman had married a second time. Herman's recitation in the 1972 deed that his wife was Billie Sue did not prove that Billie Sue and Herman were legally married. Likewise, the fact that his death certificate listed his marital status as "divorced" provided no proof that Herman had been married a second time, or that he had obtained a divorce from Dorothy. Therefore, the facts before the circuit court did not give rise to a presumption of a valid second marriage.

In the absence of such a presumption, the circuit court relied on Dorothy's testimony that she and Herman had not divorced, and that she had never received "divorce papers" from him. Based on this testimony, we conclude that the circuit court did not err in determining that Dorothy and Herman were married at the time of Herman's death.

## F. Defense of Laches

We find no merit in the LLC's argument that the circuit court erred in failing to consider its defense of laches. The LLC bases its argument on the fact that Dorothy knew about Malcolm's interest in the property in 1956 and yet did not assert any right of her own until 2003.

The doctrine of laches involves the failure of a party to assert a known right or claim for an unexplained period of time resulting in prejudice to the adverse party. Stewart v. Lady,

20

251 Va. 106, 114, 465 S.E.2d 782, 786 (1996); Masterson v. Board of Zoning Appeals, 233 Va. 37, 47, 353 S.E.2d 727, 735 (1987). The burden of proving this defense rests with the party asserting it. Stewart, 251 Va. at 114, 465 S.E.2d at 786; Morris v. Mosby, 227 Va. 517, 521-22, 317 S.E.2d 493, 496 (1984). Here, the LLC's defense failed completely because the LLC did not demonstrate that it was prejudiced by Dorothy's failure earlier to assert her ownership claim against the LLC.

## III.

The circuit court's error in excluding Exhibit 6 on the basis that it was not admissible under the business records exception and in admitting evidence of Dorothy's "understanding" of the original purchase of the property require that we remand the case for a new trial. Therefore, we do not address the LLC's assignments of error concerning discovery issues involving the amended deeds, because those issues do not affect our judgment and will not arise at a new trial. We also do not address the LLC's assignment of error that the circuit court erred in refusing to grant partition of the property. That issue can be considered only after the circuit court determines on retrial whether Dorothy met her evidentiary burden of proving the allegations of her cross-bill. Finally, we do not reach Dorothy's assignment of cross-error that the circuit court erred in failing to rule that Dorothy owned the property by virtue of

21

adverse possession, because that issue was not the subject of a ruling by the circuit court.

For these reasons, we will affirm in part, and reverse in part, the circuit court's judgment and remand the case for a new trial.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>