# CIRCUIT COURT OF HENRICO COUNTY

Erie Insurance Exchange

v.

Benjamin Jule Outlaw, Jr.,
and Jon Garmon

September 14, 2011

Case No. CL09-1918

By Judge Catherine C. Hammond

This matter is before the Court following a trial without a jury on August 18, 2011. Plaintiff, Erie Insurance Exchange ("Erie"), is an insurance exchange licensed to transact business in Virginia. Defendant, Mr. Outlaw, applied to Erie for general liability coverage for his business. Erie argues that the insurance contract is void; defendants argue that Mr. Outlaw is insured. There follow this Court's findings of fact and conclusions of law.

On October 12, 2007, Mr. Outlaw signed the application for insurance at the office of Cheryl Smith, an agent for Erie. The named applicant was "J&M Direct LLC, d/b/a Kitchens Unlimited." Also Ms. Smith checked a box for "LLC" as the applicant's form of business. Mr. Outlaw testified later that the business was in fact a sole proprietorship and no corporation was ever formed. The front of the application stated that Mr. Outlaw was the sole employee of Kitchens Unlimited. It also included Mr. Outlaw's own social security number as the applicant's social security number.

Ms. Smith testified that her habit was to ask the applicant all of the underwriting questions on the application. She testified that Mr. Outlaw "signed as the owner" of the business. She also testified, "he was the only owner." One of the underwriting questions asked, "[h]as the Applicant been arrested for any reason?" Mr. Outlaw answered, "[n]o." Based on this and other answers given by Mr. Outlaw, the application was approved, and the policy was issued.

On March 3, 2008, Mr. Outlaw was driving a truck for business reasons and collided with Jon Garmon on Staples Mill Road in Henrico County. Mr. Garmon was injured severely. In July 2008, Mr. Garmon sued Mr. Outlaw, and Erie provided a defense. As the personal injury case proceeded, Erie became aware that the underwriting was in question. Erie learned that Mr. Outlaw had in fact been arrested and convicted of several crimes before 2007.

In late December 2008, Erie received transcripts of Mr. Outlaw's deposition testimony given in October 2008. In the deposition, Mr. Outlaw admitted his criminal history. In January 2009, Erie began an investigation. However, Mr. Garmon's counsel did not know that coverage might be denied. On February 5 and March 18, 2009, Erie provided reservation of rights letters. Then, on June 3, 2009, Erie notified Mr. Outlaw that the insurance policy was void because of misrepresentations about his criminal history. On July 20, 2009, Erie filed this action for declaratory relief.

Mr. Garmon presents two initial defenses. First, he argues that Erie waived its rights by failing to satisfy Virginia Code § 38.2-2226. Second, he argues that Erie's claim is barred by laches.

With respect to the statutory defense, § 38.2-2226 provides:

> Whenever any insurer on a policy of liability insurance discovers a breach of the terms or conditions of the insurance contract by the insured, insurer shall notify the claimant or claimant's counsel of the breach. Notification shall be given within forty-five days after discovery by the insurer of the breach or of the claim, whichever is later. . . . Failure to give notice within forty-five days will result in a waiver of the defense based on such breach to the extent of the claim by operation of law.

Mr. Garmon argues that Erie waived any claim of rescission because it failed to give notice within forty-five days. Without deciding whether the forty-five days expired, this Court rejects Mr. Garmon's argument because the statute does not apply. Section 38.2-2226 applies when an insurer "discovers a breach . . . of the insurance contract" by the insured. The evidence did not reveal any breach of contract by Mr. Outlaw. Instead

the question at trial was whether a contract was formed in the first place. Accordingly, no statutory duty to notify was at issue.

With respect to the doctrine of laches, Mr. Garmon argues that Erie's delays were unreasonable and had the effect of reducing Mr. Garmon's chances to recover damages. During the months of January 2009 through June 2009, Mr. Garmon was preparing for a trial scheduled for December 2009. He contends that numerous expenses could have been avoided had he known that Erie would deny coverage.

Laches is "the neglect or failure to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party." *Stewart v. Lady*, 251 Va. 106, 114, 465 S.E.2d 782 (1996); see also *1924 Leonard Road, L.L.C. v. Van Roekel*, 272 Va. 543, 559, 636 S.E.2d 378 (2006). The Supreme Court has consistently held that the doctrine of laches determines whether rescission actions are time-barred. See *Nunnenkamp v. Copenhaver*, No. 092506, slip op. at 2, (Va. July 29, 2011) (unpublished order) ("When a trial court considers the defense of laches, it does not apply an absolute rule such as a statute of limitations, but instead the court examines each case in light of the particular circumstances."); *Morris v. Mosby*, 227 Va. 517, 521, 317 S.E.2d 493 (1984). The party asserting that an equitable claim is barred by laches must show lack of diligence by the party requesting the equitable relief and prejudice to the party asserting the defense. See *Stewart v. Lady*, 251 Va. at 114; *Masterson v. Board of Zoning Appeals*, 233 Va. 37, 47, 353 S.E.2d 727 (1987).

When did Erie know of its claim? Ms. Pacinelli testified that, after a policy is issued, Erie does not seek information about criminal conduct of an insured. The only way for Erie to know it had a claim of rescission was from developments in the tort case filed by Mr. Garmon. Until December 2008, Erie had simply provided counsel to defend its insured, Mr. Outlaw, and had not received information making the application suspicious. It was the receipt of the deposition transcripts in December 2008 that gave Erie a reason to "assert" a "known" right. I accept the testimony of Ms. Burrell that she conducted a timely investigation beginning in January 2009 and that no sooner investigation was prompted. After putting the pieces together, Erie tried to obtain an examination under oath from Mr. Outlaw, but he did not cooperate. After that, it was only four or five weeks before Erie gave written notice on June 3, 2009. This is not an unreasonable or unexplained delay. Laches does not bar Erie's claim.

Turning to Erie's rescission claim, Erie has the burden of clearly proving that the answers in the insured's application were "material to the risk when assumed and were untrue." *Mutual of Omaha Ins. Co. v. Dingus*, 219 Va. 706, 713, 250 S.E.2d 352 (1979). "A fact is material to the risk to be assumed by an insurance company if the fact would reasonably influence the company's decision whether or not to issue a policy." *Id.*

It is undisputed that, at the time the application was submitted, Mr. Outlaw had been arrested several times. It is also undisputed that these arrests were not revealed at the time Mr. Outlaw visited Ms. Smith, the agent. The only dispute is whether Mr. Outlaw was required to disclose his prior arrests in an insurance application made by his sole proprietorship, Kitchens Unlimited.

Mr. Garmon argues that the insured was the business organization, not Mr. Outlaw. He further argues that Erie's application form was so ambiguous and confusing that Mr. Outlaw's answers could not have been intentionally false.

In arguing that Erie did not prove that any statement was false or untrue, Mr. Garmon contends that the underwriting question ("has the applicant been arrested") is nearly incapable of being answered by a business organization. A limited liability corporation, which is what the agent thought she had, cannot be "arrested" in the normal course of law enforcement. The question is normally asked of a natural person. Thus, Mr. Garmon argues, the applicant, Kitchens Unlimited, must have been stumped by the question. The flaw in this reasoning is that the facts are unique. The evidence showed that Mr. Outlaw was the only one there on October 12, 2007. Whatever name was typed into the box called "applicant," Mr. Outlaw was the whole package. He was the owner, the sole employee, and the agent. The Court must consider the issue presented in the case at bar and not what might have happened in a case where there was more than one employee or two owners who could have had criminal histories. On the evidence in this case, the only reasonable inference is that Mr. Outlaw knew that the underwriting question was being asked of him individually and he concealed his arrest record.

The second flaw in Mr. Garmon's argument is the law. The distinction Mr. Garmon draws, between Mr. Outlaw and his business, was rejected in *Recalde, t/a A & R Sweeping & Cleaning v. ITT Hartford*, 254 Va. 501, 492 S.E.2d 435 (1997). The Supreme Court, in accepting a certified question of law from the District of Columbia Court of Appeals, concluded that, for the purpose of deciding the scope of coverage of a commercial insurance policy for injury or property damage arising from the use of a motor vehicle, a sole proprietorship named as the insured is not a legal entity separate and distinct from the individual owner doing business in that name. Because Mr. Outlaw and Kitchens Unlimited are not separate legal entities, Mr. Outlaw was required to disclose his prior arrests on the insurance application.

Erie has satisfied its burden to prove that the answers in Mr. Outlaw's insurance application were untrue. As to the second element, materiality, both Mr. Bauer, an Erie underwriter, and Ms. Pacinelli testified that the application would not have been approved had Mr. Outlaw's arrests been disclosed. It is clear that Mr. Outlaw's prior arrests and convictions would

have been material to the risk under consideration and that his criminal history would have reasonably influenced the decision whether to insure.

For the reasons stated above, the Court finds and concludes that Erie should have judgment declaring the contract of insurance to be void *ab initio*.