Present: All the Justices

FRANK SHOP, INC.

                                        OPINION BY
v.  Record No. 011562          CHIEF JUSTICE HARRY L. CARRICO
                                        June 7, 2002

CROWN CENTRAL
PETROLEUM CORPORATION

              FROM THE CIRCUIT COURT OF HENRICO COUNTY
                          George F. Tidey, Judge

     This is the second time this case has come before the Court.  In Frank Shop, Inc. v. Crown Central Petroleum Corp., 261 Va. 169, 540 S.E.2d 897 (2001) (Frank Shop I), we reversed a judgment adverse to Frank Shop, Inc. (Frank Shop) and held that because Crown Central Petroleum Corporation (Crown) had failed to prove its entitlement to protection under the "grandfather clause" of the Virginia Petroleum Products Franchise Act, Code §§ 59.1-21.8 through -21.18:1 (the Act), it was in violation of the Act for operating a refinery-owned gasoline service station located less than one and one-half miles from a franchised retail gasoline station operated by Frank Shop.[1]  We remanded the case "for determination of the relief to which Frank Shop may be entitled."  Id. at 177, 540 S.E.2d at 902.

     Our opinion in Frank Shop I was handed down January 12, 2001, and we refused Crown's petition for rehearing on March 2,

_____

     [1] The one and one-half mile prohibition is found in Code § 59.1-21.16:2(A) and the "grandfather clause" is found in Code § 59.1-21.16:2(E).  The "grandfather clause" states that "[t]he

2001.  Thereafter, Crown continued with the operation of its service station.

On May 11, 2001, Frank Shop filed in the trial court a Motion for Entry of Permanent Injunction and Award of Attorney's Fees, Costs, Liquidated Damages and Disgorgement of Profits (Motion for Relief).  In the motion, Frank Shop sought a permanent injunction prohibiting Crown from further operation of its service station, $2,500 in liquidated damages, and attorney's fees, all as prescribed by Code § 59.1-21.12.[2]  In addition, noting the reference in Code § 59.1-21.12 to "such other remedies, legal or equitable, . . . as may be available to the party damaged," Frank Shop sought to have Crown required to disgorge the profits it had derived from the "illegal operation" of its service station since March 2, 2001, the date this Court refused the petition for rehearing in Frank Shop I.

Crown responded by contending Frank Shop was not entitled to a disgorgement of profits.  Crown argued that because this Court did not enjoin it from operating its service station and

provisions of this section shall not be applicable to retail outlets operated by producers or refiners on July 1, 1979.

[2] Code § 59.1-21.12(A) provides in pertinent part as follows:

Any person who violates any provision of [the Act] shall be civilly liable for liquidated damages of $2,500 and reasonable attorney's fees, plus provable damages caused as a result of such violation, and be subject to such other

2

the trial court had not entered an injunction prohibiting the operation, Crown was not illegally operating the station.  Crown also argued that Frank Shop was not entitled to an injunction but that, if the court awarded Frank Shop an injunction, Crown "should be allowed 60-90 days to complete its search for, and installation of, a franchise dealer to operate the retail outlet."

On June 4, 2001, the trial court heard argument on the parties' respective positions concerning the relief to which Frank Shop was entitled.  In a letter opinion dated the next day, the trial court allowed Frank Shop $52,500 in attorney's fees, $2,500 in liquidated damages, and an injunction, but delayed the effective date of the injunction until August 1, 2001.  The court denied Frank Shop's request for a disgorgement of profits, stating that Crown "has acted properly pursuant to the ruling of the Supreme Court of Virginia" and disgorgement would not be "appropriate in this case."  A final decree entered June 19, 2001, embodied the trial court's rulings.  We awarded Frank Shop this appeal.

Frank Shop has assigned two errors, as follows:

A.  The trial court erred in delaying the effective date of its permanent injunction to August 1, 2001.

---

remedies, legal or equitable, including injunctive relief, as may be available to the party damaged by such violation.

3

B.  The trial court erred in failing to order Crown to disgorge its profits earned subsequent to March 2, 2001.

Crown contends the first assignment of error is moot because "[t]he trial court's permanent injunction is now effective and, moreover, Crown Central complied with the permanent injunction on July 19, 2001."[3]  Frank Shop maintains that the first assignment of error is not moot because the delay in the effective date of the injunction is not only an issue with respect to the first assignment of error but also to the second.  According to Frank Shop, it is Crown's contention that the delay in the effective date of the injunction "essentially 'authorized' [Crown's] continuing conduct so that disgorgement is not appropriate."  Frank Shop says that while it disagrees with Crown's contention, the contention itself demonstrates that the delay in the effective date of the injunction is an issue that permeates both assignments of error.

We agree with Frank Shop that the first assignment of error is not moot; the issues raised by the two assignments are intertwined.  As the parties have addressed the question of

---

[3] The trial court's final decree provided that the retail outlet in question should not be operated under the Crown name after August 1, 2001, unless and until Crown gave counsel for Frank Shop notice in writing under oath by certified mail that the operator of the outlet was a franchised dealer.  Crown states in its brief that it gave Frank Shop the required notice, certifying that a franchise dealer was operating the retail outlet as of July 19, 2001, but there is nothing in the record to support Crown's statement.

4

disgorgement, resolution of the question would depend, at least in part, on whether delaying the effective date of the injunction was proper or improper.  Assuming disgorgement is available to Frank Shop, if the delay was proper, Crown would not be required to disgorge, at least for the period of delay; if the delay was improper, Crown could be required to disgorge for the period of delay as well.

With respect to the first assignment of error, Frank Shop argues that this Court's opinion in Frank Shop I "was clear and unequivocal: Crown's continuing conduct was in violation of Virginia law."  The trial court was duty bound to uphold the law as this Court pronounced it, and "that meant ordering Crown to stop its unlawful operation."  In exercising its equitable powers, a trial court cannot permit what this Court and the General Assembly have said is unlawful.  The trial court's action in this case can only be explained by its acceptance of Crown's plea of hardship in finding a franchise dealer, and it was an abuse of discretion for the court to accept the plea and refuse to make the injunction effective immediately.

Responding, Crown argues that the issuance of an injunction and the timing of its effective date were matters within the sound discretion of the trial court.  Crown introduced evidence showing what is involved in installing a franchise dealer, which includes extensive searching for a person or entity willing to

invest $80,000 to $100,000, followed by equally extensive training and education of the person in the operation of a retail outlet.  The trial court was within its discretion to consider and credit Crown's evidence and determine that, while a permanent injunction was appropriate, it was equitable to allow Crown a relatively short period of time to comply with the injunction.

We do not question the power of a court of equity, in the exercise of its discretion in an ordinary case, to fashion a remedy that would eliminate or lessen the hardship imposed upon a party by a particular decision.  But this is not an ordinary case.  This is a situation where a party, held by this Court to be in violation of the law, seeks judicial permission to continue violating the law until it works itself out of the supposed hardship in which it finds itself.  In the peculiar set of facts involved in this case, it was a clear abuse of discretion for the trial court to grant such permission.[4]  The

---

[4] Crown argues that the trial court's decision to allow Crown time to comply with the injunction is in accord with a regulation adopted pursuant to the Act that allows a producer or refiner to operate temporarily a previously franchised dealer-operated retail outlet when the franchised dealer is lawfully terminated or not renewed, or if the franchised dealer becomes ill or injured.  2 VAC 5-460-10.  However, there is a substantial difference between Crown's situation and that of a producer/refiner entitled to the benefit of the regulation.  The regulation contemplates a previous legal operation of a retail outlet; Crown's operation was illegal.

trial court should have made the injunction effective immediately.

This brings us to the question of disgorgement. With respect to this question, Frank Shop argues that its entitlement to disgorgement "is rooted in two principles: (1) Crown should not be permitted to profit from its wrongdoing, and (2) 'equity will not suffer a wrong to be without a remedy.' Price v. Hawkins, 247 Va. 32, 37, 439 S.E.2d 382, 385 (1994)." This Court explicitly held in Frank Shop I that Crown's operation of its retail outlet was unlawful, yet Crown deliberately repudiated that decision and continued the operation for months until enjoined effective August 1, 2001. Crown is a large, sophisticated refining company, and it cannot contend that it thought the lack of an injunction somehow made lawful or otherwise authorized conduct this Court expressly said was unlawful.

Continuing, Frank Shop says that Crown's action subjects it to a panoply of statutory remedies, including an injunction to stop the violation, and other remedies to redress the violation, including liquidated damages of $2,500. The Act also provides "such other remedies, legal or equitable, . . . as may be available to the party damaged by such violation," Code § 59.1-21.12(A), and this expressly allows a court to fashion remedies beyond, and in addition to, those enumerated. Disgorgement of

7

profits is one such equitable remedy, particularly significant for Crown's deliberate violation of the law.  If Frank Shop is limited to recovering liquidated damages of $2,500, then Crown will have suffered no real consequences for its wrongdoing.

Countering, Crown maintains that it did not ignore this Court's ruling.  Immediately after this Court's reversal, and before the denial of Crown's petition for rehearing, Crown commenced its search for a franchise dealer who could operate the retail outlet.  When the trial court did impose a permanent injunction, Crown complied with its terms.  In fact, Crown had a franchise dealer in place and operating the outlet earlier than the effective date of the injunction.

Moreover, Crown continues, this Court did not enjoin its operation of the retail outlet or make any other determination concerning the appropriate relief, but instead left that determination to the sound discretion of the trial court.  Such discretion would include a determination by the trial court regarding if and when an injunction should issue and whether Crown's profits should be disgorged.  The court determined that a permanent injunction was appropriate, but that it was reasonable to allow Crown time to install a franchise dealer. For the same reasons, the court determined that Crown had not

acted in bad faith[5] and that the unusual remedy of disgorging profits would not be appropriate. In making these determinations, Crown concludes, the trial court did not abuse its discretion.

We have not previously considered the question whether disgorgement of profits is an appropriate remedy for a violation of the Act. In resolving the question, the provisions of the Act are pertinent.

The purpose of the Act is set forth in Code § 59.1-21.9 as follows:

> The General Assembly finds and declares that since the distribution and sales through franchise arrangements of petroleum products in the Commonwealth of Virginia vitally affect the economy of the Commonwealth, the public interest, welfare, and transportation, and since <u>the preservation of the rights, responsibilities, and independence of the small businesses in the Commonwealth is essential to economic vitality</u>, it is necessary to define the relationships and responsibilities of the parties to certain agreements pertaining thereto.

(Emphasis added.)

Code § 59.1-21.16:2(A) contains the one and one-half mile prohibition at issue in <u>Frank Shop I</u>. That Code section states in pertinent part as follows:

---

[5] What the trial court actually said was that Crown had "acted properly pursuant to the ruling of the Supreme Court of Virginia handed down on January 12, 2001 and the denial of the rehearing on March 2, 2001." It should not be necessary to observe that a party cannot be acting properly under a ruling when this Court has determined that the party's action is illegal.

9

> [N]o refiner of petroleum products shall operate any major brand, secondary brand, or unbranded retail outlet in the Commonwealth of Virginia with company personnel, a parent company, or under a contract with any person, firm, or corporation, managing a service station on a fee arrangement with the refiner; however, such refiner may operate such retail outlet with the aforesaid personnel, parent, person, firm, or corporation if such outlet is located not less than one and one-half miles . . . from the nearest retail outlet operated by any franchised dealer.

These statutory provisions were considered in Crown Central Petroleum Corp. v. Hill, 254 Va. 88, 488 S.E.2d 345 (1997). There, we stated as follows:

> The specific location prohibition at issue is completely consistent . . . with the expressed legislative intent, to preserve "the rights, responsibilities, and independence of the small businesses in the Commonwealth." § 59.1-21.9. A refiner operating a retail outlet is an integrated business entity which produces its product and sells that product at both the wholesale and retail level. Thus, the refiner has the ability to allocate availability of its product and subsidize the price of its product sold at its retail outlets. . . . It is the refiner's integration and access to the product that puts the retail franchised dealer at a potentially competitive disadvantage. Therefore, to protect the rights of franchised dealers in avoiding such a potentially unfair price structure and thus preserve the independence of dealers, the General Assembly chose to require a minimum distance of one and one-half miles between a refinery-owned-and-operated retail station and a retail station operated by a franchised dealer.

Id. at 92-93, 488 S.E.2d at 347 (emphasis added). Keeping in mind the emphasis on the purpose of the Act to preserve the rights and independence of small businesses, i.e., franchise dealers, we now turn to the remedies the General Assembly has provided for a violation of the Act.

10

As noted previously, Code § 59.1-21.12 provides that any person who violates the Act "shall be civilly liable for liquidated damages of $2,500 and reasonable attorney's fees, plus provable damages caused as a result of such violation, and be subject to such other remedies, legal or equitable, including injunctive relief, as may be available to the party damaged by such violation."  It will be observed that the remedy provided is not liquidated damages or attorney's fees or provable damages or such other remedies, legal or equitable, including injunctive relief, as may be available to the party damaged by such violation.  Rather, the remedies provided are liquidated damages and attorney's fees and provable damages and such other remedies, legal or equitable, including injunctive relief, as may be available to the party damaged by such violation.

In other words, the General Assembly intended not only to provide remedies in the form of liquidated damages, attorney's fees, proven damages, and injunctive relief but also, in the broadest of terms, to provide other remedies appropriate to a particular violation of the Act.  And the language employed cannot be read to exclude the remedy of disgorgement of profits.  Indeed, considering that the remedies provided are intended to carry out the purpose of the Act to preserve the rights and independence of franchised dealers, we are of opinion that disgorgement of profits fits logically within the framework of

11

"other remedies, legal or equitable, . . . as may be available to the party damaged by such violation." We are further of opinion, however, that the remedy of disgorgement should only be available for a willful violation of the Act, and not for some innocent or unintended violation.

There can be no dispute that Frank Shop is a party within the class protected by the Act. Nor can there be any dispute that Crown's violation was willful. At least from March 2, 2001, when this Court refused Crown's petition for rehearing, Crown was on notice it was in violation of the Act. Yet, it took the position in response to Frank Shop's Motion for Relief that, because this Court did not enjoin it from operating its retail outlet and the trial court had not entered an injunction prohibiting the operation, it was not illegally operating the station. And it apparently thought it could keep on operating until someone made it stop by way of an injunction.

But an injunction was not needed to make the operation illegal. Our opinion in Frank Shop I and the refusal of Crown's petition for rehearing made clear that the operation was illegal. Crown's willfulness was evidenced by the deliberate decision it made thereafter to continue operating even at the peril of becoming subject to the remedies provided by the Act.

Crown's willfulness was displayed in another way. When faced with the entry of an injunction, its immediate reaction

was to ask for a delayed effective date.  The delay did not make Crown's operation legal, but Crown deliberately took advantage of the delay to continue its illegal operation.

What makes disgorgement such an appropriate remedy in this situation is that it was Crown's obvious purpose to continue operating, although illegally, until a franchise dealer was in place so there would be no break in its receipt of profits from each day's operation.  To permit Crown to retain the profits under these circumstances would run counter to the principles that one should not be permitted to profit from his own wrongdoing and that equity will not suffer a wrong to be without a remedy.  To require disgorgement in this case would serve those principles well.

But, Crown argues, Frank Shop's disgorgement theory is an unwarranted attempt to obtain punitive damages, and in the absence of a statutory provision, Frank Shop is not entitled to seek punitive damages under any guise.  The Act does not provide for punitive damages, so Frank Shop is not entitled to any such exemplary damages no matter how it frames the recovery.

We disagree with Crown.  Punitive damages are not allowed as compensation for plaintiff's loss but as a warning to others and punishment to the wrongdoer.  Giant of Virginia, Inc. v. Pigg, 207 Va. 679, 685, 152 S.E.2d 271, 277 (1967). Disgorgement on the other hand is "[t]he act of giving up

13

something (such as profits illegally obtained) on demand or by legal compulsion," Black's Law Dictionary 480 (7th ed. 1999), with the amount disgorged awarded to the party damaged by the illegal act.

Crown also argues that Frank Shop waived any claim for disgorgement because it did not request that relief in its original bill of complaint or at the original trial and did not raise the claim until after the remand of Frank Shop I. But, as Frank Shop points out, it could not have foreseen that after this Court announced Crown's operation was unlawful, Crown would continue the unlawful operation. Hence, the claim for disgorgement did not mature until after the remand.

Finally, Crown argues that Frank Shop's equitable theory of disgorgement is barred by the doctrine of unclean hands because Frank Shop failed to disclose pertinent, responsive materials during the discovery phase of Frank Shop I, and the trial court was within its discretion to consider this failure in denying Frank Shop's request for relief. However, in the final decree, the trial court stated that Frank Shop's motion for disgorgement was denied for the reasons set forth in the court's letter opinion. Frank Shop's alleged failure to disclose was not listed as one of the reasons set forth in the letter opinion, so the trial court apparently did not consider the failure a

14

sufficient reason to deny disgorgement.  We would not disagree with the trial court on this point.

For the reasons assigned, we will reverse the judgment of the trial court and remand the case with direction to determine the date on which Crown ceased operating the retail outlet, to determine and make an award to Frank Shop of the profits earned by Crown from its unlawful operation of the retail outlet from March 2, 2001 to the date Crown ceased such operation, and to determine and make an award to Frank Shop of reasonable attorney's fees and costs incurred subsequent to the trial court's June 4, 2001 hearing, including those incurred in this appeal.

                                        <u>Reversed and remanded</u>.