## CIRCUIT COURT OF HANOVER COUNTY

Quick Serve Concepts, L.L.C.

v.

Cedar Fair, L.P.,
and Cedar Fair
Southwest, Inc.

May 27, 2011

Case No. CL08000642-00

By Judge J. Overton Harris

Before the Court are Defendant's Motion to Set Aside the Verdict and Motion to Strike. The Court heard argument on April 13, 2011, and took the matter under advisement. After careful review and consideration, the Court rules as follows.

### I. *Background*

On July 28, 2008, Plaintiff filed a Complaint against Defendant in the Hanover Circuit Court alleging breach of written contract, breach of oral contract, conversion, unjust enrichment, and interference with contract expectancy. Plaintiff sought to recover money damages and punitive damages. On the unjust enrichment claim, Plaintiff also requested equitable relief in the form of an accounting, imposition of a constructive trust, and disgorgement of profits. On September 2, 2008, Defendant filed a Counterclaim against Plaintiff alleging breach of contract and requesting money damages in the amount of $37,491.72, plus costs, pre-judgment interest from November 30, 2005, and post-judgment interest.

Plaintiff requested a trial by jury. Since the unjust enrichment claim was contingent upon a finding in favor of Plaintiff on the conversion claim, the Court bifurcated the unjust enrichment claim. The remaining claims were

tried by a jury on January 6-13, 2011. At the close of Plaintiff's evidence, the Court granted Defendant's Motion to Strike Plaintiff's claims for breach of written contract and interference with contract expectancy. At the close of all of the evidence, the Court granted Defendant's renewed Motion to Strike Plaintiff's claim for breach of oral contract. Thus, the only issues that went to the jury were Plaintiff's conversion claim and Defendant's Counterclaim for breach of contract.

The claims arose from a business relationship between the parties that permitted Plaintiff to operate several food concessions within the Kings Dominion amusement park. Kings Dominion amusement located in Doswell, Virginia, was previously owned by Paramount Parks, Inc. Defendant is a successor in interest to Paramount Parks, Inc. On the conversion claim, Plaintiff argued that Defendant converted its property by withholding one of Plaintiff's concession locations (the "Kiosk") after the parties' business relationship ended and/or by subsequently renovating and using the Kiosk. Defendant argued that Plaintiff owed $37,491.52 in revenue shortfalls for the 2005 season and that the 2004-2005 Concession Agreement between the parties gave Defendant the contractual right to withhold anything of value belonging to Plaintiff. Plaintiff did not dispute the existence or amount of the revenue shortfalls. Rather, Plaintiff claimed it was excused from paying the revenue shortfalls because Defendant breached its duty under the 2004-2005 Concession Agreement to maintain Plaintiff's revenue locations in a workable condition.

Plaintiff's corporate representative, Frank Reed, testified that, at the beginning of 2006, he was notified that Defendant would not renew their contract for the upcoming season and that Defendant was withholding the Kiosk pursuant to the 2004-2005 Concession Agreement until Plaintiff paid the $37,491.52 in revenue shortfalls. Mr. Reed testified that he was later allowed to remove certain equipment from the park, but he was never allowed to remove the Kiosk. Defendant disputed Mr. Reed's testimony on this issue through the two witnesses who testified that Defendant changed its position to allow Plaintiff to remove the Kiosk from the park. In any event, the evidence is undisputed that the Kiosk sat idle in the park for the entire 2006 season, and that sometime in 2007, Defendant renovated and began using the Kiosk.

The jury found in favor of Plaintiff on the conversion claim in the amount of $96,000 and awarded interest from February 1, 2006. The jury also found in favor of Defendant on the Counterclaim in the amount of $37,491.52.

## II. *Motion To Set Aside the Jury Verdict*

On March 9, 2011, Defendant filed a Motion To Set Aside the Jury Verdict on the conversion claim. Defendant argues that the verdict should

be set aside for two reasons: (1) the verdict is internally inconsistent with the verdict on Defendant's Counterclaim and contrary to the law and the evidence, and (2) the Court erred in allowing inadmissible and insufficient valuation evidence from Plaintiff's corporate representative while striking proper and admissible valuation evidence from Defendant's expert.

A. *Consistency of Jury Verdict*

Defendant argues that the verdict in favor of Plaintiff on the conversion claim is internally inconsistent and without evidence to support it, indicating that the jury misconceived or misunderstood either the facts or the law. Defendant's argument relies upon the following instructions to the jury on Plaintiff's conversion claim:

> You shall find your verdict for [Plaintiff] on its conversion claim if it has proved by the greater weight of the evidence that:
> (1) [Plaintiff's] revenue guarantee was excused by [Defendant's] failure to maintain [Plaintiff's] vending locations in a workable condition; *or*
> (2) Even if [Defendant] was initially justified in withholding [Plaintiff's] Kiosk under Section 2.11 of the parties' 2004-2005 Concession Agreement, [Defendant] exceeded its authority as a bailee and converted [Plaintiff's] property by either or both of the following acts:
> (a) Performing renovations to the Kiosk without the consent of [Plaintiff];
> (b) Using and operating the Kiosk for-profit during 2007, 2008, 2009, and 2010 without the consent of [Plaintiff].

Jury Instruction No. 62. The verdict form did not provide any method for the jury to identify which basis it relied upon in reaching its decision. The jury was also instructed that it may award interest from the date of conversion. Jury Instruction No. 58.

Defendant argues that the evidence clearly established that the Kiosk sat idle for the entire 2006 season and was not used or renovated until 2007. By awarding interest from February 1, 2006, the date of the conversion, the jury could not have relied upon the bailment theory in the second prong of Jury Instruction No. 62 without committing error. However, to find that a conversion occurred under the first prong of Jury Instruction No. 62, the jury was required to find that Plaintiff's revenue guarantees were excused by Defendant's failure to maintain Plaintiff's vending locations in a workable condition. According to Defendant, the verdict suggests that the

jury misunderstood or misconstrued the evidence or the law, and Defendant is asking that the verdict be set aside.

Under Virginia Code § 8.01-430, the verdict of a jury in a civil action may be set aside by a trial court on the ground that it is contrary to the evidence or without evidence to support it. A trial court's authority to set aside a jury verdict:

> can only be exercised where the verdict is plainly wrong or without credible evidence to support it. If there is a conflict in the testimony on a material point, or if reasonable men may differ in their conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given the testimony, the trial judge cannot substitute his conclusion for that of the jury merely because he would have voted for a different verdict if he had been on the jury. The weight of a jury's verdict, when there is credible evidence upon which it can be based, is not overborne by the trial judge's disapproval.

*Lane v. Scott*, 220 Va. 578, 581-82, 260 S.E.2d 238, 240 (1979) (citing *Commonwealth v. McNeely*, 204, Va. 218, 222, 129 S.E.2d 687, 689-90 (1963)). "[I]n considering the evidence, the court gives the recipient of the verdict the benefit of all substantial conflicts in the evidence and all reasonable inferences that may be drawn from the evidence." *Shalimar Dev., Inc. v. FDIC*, 257 Va. 565, 570, 515 S.E.2d 123 (1999).

The Court must "read the jury instructions together and consider them as a whole." *See SuperValu, Inc. v. Johnson*, 276 Va. 356, 366, 666 S.E.2d 335, 341 (2008) (citations omitted). In this case, the Court granted the following instructions to the jury on Plaintiff's conversion claim in addition to the instructions cited by Defendant:

> Conversion is the wrongful exercise or assumption of authority over another's goods, depriving the owner of possession. Conversion includes any distinct act of dominion wrongfully exerted over the property that is in denial of, or inconsistent with the owner's rights.

Jury Instruction No. 44.

> It is the wrongful exercise of dominion over another's property that makes a conversion. It is not necessary that the proof show that the defendant applied it to its own use; it need only

be shown that it dealt with the property as if it were its own, and in defiance of the owner's right.

Jury Instruction No. 45.

There was evidence presented at trial from which the jury could have concluded that Defendant intended to convert the Kiosk prior to the time that Defendant renovated and began using the Kiosk in 2007. An internal e-mail sent on May 7, 2006, from Owen Matthews to Defendant's corporate counsel was admitted into evidence. The e-mail states that "[w]ith the water park opening in two weeks — we are planning to use the kiosk which [Plaintiff] previously occupied and operated." Additionally, Mr. Reed testified that, prior to Defendant's informing Plaintiff of its intention not to renew the parties' written contract for 2006, Defendant had already put the Kiosk in the budget for 2006. Based on the evidence, the jury could have concluded that Defendant converted the Kiosk by dealing with the Kiosk as if it were its own in May 2006 or a reasonable period before then. Therefore, the Court cannot conclude that the jury's verdict awarding interest from February 1, 2006, on Plaintiff's conversion claim is plainly wrong or without credible evidence to support it.

The Court finds that there was sufficient evidence at trial to support the verdict. The verdict was not internally inconsistent and does not compel the conclusion that the jury misconceived or misunderstood either the facts or the law. Defendant's Motion To Set Aside the Verdict on such basis is denied.

B. *Valuation Evidence*

(1) *Testimony by Mr. Reed*

Defendant argues that the Court erred in allowing valuation evidence from Plaintiff's corporate representative, Mr. Reed. Defendant states that Mr. Reed's testimony was inadmissible and insufficient evidence because Mr. Reed's expected testimony was never properly or timely disclosed as an expert witness and he was not qualified to provide opinion testimony on the value of the Kiosk. The Court disagrees.

It is a "well-established rule that a plaintiff has the burden to prove the amount of damages with reasonable certainty." *Estate of Taylor v. Flair Prop. Assocs.*, 248 Va. 410, 415, 448 S.E.2d 413, 416 (1994). "Damages need not be established with mathematical certainty. Rather, a plaintiff is required only to furnish evidence of sufficient facts to permit the trier of fact to make an intelligent and probable estimate of the damages sustained." *Id.* at 414, 448 S.E.2d at 416 (citing *Bulala v. Boyd*, 39 Va. 218, 232-33, 389 S.E.2d 670, 677 (1990); *Thomas P. Harkins, Inc. v. Reynolds Assocs.*, 221 Va. 1128, 1131-32, 277 S.E.2d 222, 224 (1981); *Gwaltney v. Reed*, 196 Va.

505, 507-08, 84 S.E.2d 501, 502 (1954)). The correct measure of damages for conversion is the value of the property converted at the time and place of the conversion. *Straley v. Fisher*, 176 Va. 163, 167, 10 S.E.2d 551, 553 (1940). Under Virginia law:

> [i]t is generally recognized that the opinion testimony of the owner of property, because of his relationship as owner, is competent and admissible on the question of the value of such property, regardless of his knowledge of property values. It is not necessary to show that he was acquainted with the market value of such property or that he is an expert on values. He is deemed qualified by reason of his relationship as owner to give estimates of the value of what he owns.

*Haynes v. Glenn*, 197 Va. 746, 750, 91 S.E.2d 433, 436 (1956).

In this case, it is undisputed that Mr. Reed is the owner of the Kiosk. It was not necessary for Mr. Reed to be disclosed as an expert witness; he was a lay witness giving opinion testimony. Under Virginia law, Mr. Reed was deemed qualified by reason of his relationship as owner of the Kiosk to give opinion testimony as to the value of the Kiosk. Therefore, the Court finds that it did not err in allowing Mr. Reed to testify as to his opinion on the value of the Kiosk.

Next, Defendant argues that, even if Mr. Reed were permitted to testify as to his opinion on the value of the Kiosk, his testimony did not meet the standard for admissibility of evidence on damages for conversion for two reasons. First, Mr. Reed's opinion was based solely on the cost of the Kiosk when it was built in 2004. Second, Mr. Reed's opinion did not account for any depreciation or other change in value, and there was no other evidence presented by Plaintiff in that regard.

With regard to Defendant's first point, Mr. Reed's opinion as to the value of the Kiosk was not based solely on the cost of the Kiosk when it was built in 2004. Mr. Reed testified that he based his opinion of the value of the Kiosk on several factors, including original costs incurred, replacement costs, the costs of alternatives considered, and a $250,000 quote originally provided by Defendant.

Turning to Defendant's second point, Defendant relies on *White Consolidated Industry, Inc. v. Swiney*, 237 Va. 23, 376 S.E.2d 283 (1989), a case in which the plaintiff sought damages for items destroyed in a fire. Plaintiff, as owner of the property, sought to introduce evidence on the value of the items based on a list of the original costs of the items. The court ruled that "[w]ithout benefit of any evidence on the rate of depreciation or other proof of fair market value of the contents of the house immediately preceding the fire[,] [the plaintiffs' evidence on costs] was insufficient

to discharge the plaintiffs' burden of proving the quantum of damages sustained." *Id.* at 31, 376 S.E.2d at 287.

The present case is distinguishable from *White Consolidated*. In *White Consolidated*, the plaintiffs' conceded that they did not know the value of the property immediately before it was damaged by fire. In contrast, Mr. Reed testified to the value of the Kiosk as of February 1, 2006, which is the date Defendant first informed him that he could not remove the Kiosk. Mr. Reed also testified that the value of the Kiosk was the same in May 2007 by which time Defendant had undertaken renovations of the Kiosk. As stated, Mr. Reed's opinion as to the value of the Kiosk was not limited to the cost of the Kiosk when it was built. The Court did not err in allowing Mr. Reed's testimony, and the Court declines to set aside the jury verdict on this basis.

### (2) *Testimony by Mr. King*

Defendant argues that the Court erred in striking valuation evidence from Defendant's expert witness, Mr. King. At trial, the Court ruled that Mr. King's testimony regarding the value of the Kiosk was stricken because Mr. King's valuation was based entirely on the date of his inspection, which was performed in 2009. Defendant argues that the length of time between the conversion and Mr. King's valuation goes to the weight of Mr. King's testimony, but not the admissibility.

"[I]t is generally held that evidence of value a reasonable time prior and subsequent to the conversion is admissible, its weight being for the trier of fact." *Haynes v. Glenn*, 197 Va. at 753, 91 S.E.2d at 438. In this case, Mr. King testified that he was never even asked to render an opinion as to the value of the Kiosk at any point other than the date of his 2009 inspection. The evidence was that Defendant had begun renovating the Kiosk before the 2007 season, but Defendant did not present evidence as to the extent of the renovations that took place prior to the 2007 season. Since Defendant could not link Mr. King's opinion as to the value of the Kiosk in 2009 to the value of the Kiosk in 2006 or 2007, there was no foundation that would have allowed Mr. King's testimony to be admitted into evidence. Furthermore, Mr. King's opinion as to the value of the Kiosk in 2009 was not a reasonable time before or after the conversion to permit the jury to consider the evidence based on the renovations and Defendant's use of the Kiosk for at least three seasons. Accordingly, the Court finds that it did not err in striking Mr. King's testimony, and the Court declines to set aside the jury verdict on this basis.

### III. *Pre-Trial Motion To Dismiss and Post-Trial Motion To Strike*

Count III of Plaintiff's Complaint is a claim for unjust enrichment. On the unjust enrichment claim, Plaintiff is requesting equitable relief in the form of an accounting, imposition of a constructive trust, and disgorgement of all profits. Prior to trial, Defendant moved the Court to dismiss Plaintiff's unjust enrichment claim on the grounds that it is not a legally permissible claim in Virginia. Plaintiff opposed the motion. It was Plaintiff's position that the unjust enrichment claim was contingent upon a finding in favor of Plaintiff on the conversion claim and, therefore, the Court should reserve ruling on Defendant's Motion to Dismiss the unjust enrichment claim until the jury returned a verdict on the conversion claim. Rule 3:22(e) of the Supreme Court of Virginia states:

> In any case when there are both jury and non-jury issues to be tried, the court shall adopt trial procedures and a sequence of proceedings to assure that all issues properly heard by the jury are decided by it, and applicable factual determinations by the jury shall be used by the judge in resolving the non-jury issues in the case.

With the agreement of the parties, the Court reserved ruling on the Motion to Dismiss until after the jury trial on the conversion claim.

The jury found in favor of Plaintiff on the conversion claim, and Plaintiff is now seeking to proceed with the unjust enrichment claim. Defendant filed a post-trial motion requesting that the Court strike Plaintiff's claim for unjust enrichment and disgorgement of profits on the grounds that the claim is not supported by the law or the evidence. In support of its Motion to Strike, Defendant argues that, in this case, disgorgement of all profits is not a permissible item of damages. First, Defendant asserts that, under Virginia law, damages for conversion include the value of the property converted plus interest from the date of conversion. Plaintiff's conversion claim was already tried to a jury, and Plaintiff received a verdict in the full amount of the value of the Kiosk plus interest from the date of conversion. Plaintiff should not be entitled to recover all of the profits Defendant earned from the conversion in addition to what the jury awarded Plaintiff. Second, Defendant argues that, even if Defendant was unjustly enriched, Virginia law will not permit Plaintiff to disgorge *all* profits derived from use of the Kiosk. Rather, Plaintiff would be limited to recovering the fair value of any benefit Defendant received for which the law implies a promise to pay. The only benefit Defendant received was use of the Kiosk, and, consequently, the proper measure of damages should be the fair rental value of a similar building. Finally, Defendant argues that, as of the date of conversion, title

to the Kiosk transferred to Defendant, and, therefore, Plaintiff has no claim for any use of the Kiosk by Defendant after the date of conversion.

Virginia law recognizes "the doctrine that a man shall not be allowed to enrich himself unjustly at the expense of another." *Kern v. Freed Co.*, 224 Va. 678, 681, 299 S.E.2d 363, 365 (1983) (citing *Rinehart v. Pirkey*, 126 Va. 346, 351, 101 S.E. 353, 354 (1919)). An action for unjust enrichment is a recognized claim under Virginia law. To prevail on a claim for unjust enrichment, a plaintiff must prove "(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." *T & M Elec., Inc. v. Prologis Trust*, 70 Va. Cir. 403, 405-06 (2006) (Loudoun County) (citing *Nossen v. Hoy*, 750 F. Supp. 740, 745 (E.D. Va. 1990)). Having determined that unjust enrichment is a legally permissible claim in Virginia, the pre-trial Motion To Dismiss that the Court reserved ruling on is denied. Additionally, the Motion To Strike is denied to the extent that it incorporates the Motion To Dismiss. Plaintiff is entitled to go forward on the unjust enrichment claim.

To the extent that the Motion To Strike is in effect a Motion in Limine on whether Plaintiff may seek disgorgement of all profits for unjust enrichment, the Motion is granted. Plaintiff relies on *Frank Shop, Inc. v. Crown Central Petroleum Corp.*, 264 Va. 1, 564 S.E.2d 134 (2002), for the proposition that Virginia law allows for disgorgement of *all* profits for unjust enrichment. In *Frank Shop*, the Court held that disgorgement of all profits was an appropriate remedy for violation of the Virginia Petroleum Products Franchise Act given the particularly egregious circumstances of that particular case. *See Frank Shop, Inc.*, 264 Va. at 11, 564 S.E.2d at 139. In the present case, evidence was presented at trial as to the circumstances of the conversion. Based on the evidence, the Court finds that the circumstances surrounding the conversion were not so egregious that equity demands the taking of *all* profits. The measure of damages in unjust enrichment actions is the value of the benefit which accrued to the defendant. The value of the benefit accrued to Defendant as a result of the conversion is a factual issue to be determined at the hearing on the unjust enrichment claim.