UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges AtLee, Chaney and Frucci
Argued by videoconference


LM INSURANCE CORPORATION

MEMORANDUM OPINION[*] BY
v.      Record No. 0457-24-4          JUDGE VERNIDA R. CHANEY
SEPTEMBER 9, 2025

GM DRYWALL & REMODELING, LLC


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Robert P. Coleman, Judge

Brady A. Yntema (Goldberg Segalla LLP, on briefs), for appellant.

Sean D. O'Malie (Law Office of Sean D. O'Malie, PLC, on brief),
for appellee.


Appellant LM Insurance Corporation ("LM")[1] sued appellee GM Drywall &

Remodeling, LLC ("GM Drywall") for insurance premiums.  GM Drywall obtained a worker's

compensation insurance policy from LM.  At the end of the policy period, LM conducted an audit

through a third-party service and reimbursed the final premium to GM Drywall.  Due to a

discrepancy in the initial audit report, LM conducted a second audit and determined that GM

Drywall owed an additional premium.  When GM Drywall did not pay the additional premium, LM

commenced an action for a warrant in debt in the general district court.  LM subsequently appealed

de novo to the circuit court.  During the bench trial, the circuit court granted GM Drywall's

motion to strike LM's evidence, and LM appeals.  For the reasons stated below, we affirm the

circuit court on the merits as to LM's first assignment of error.  However, for the reasons stated

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] LM Insurance Corporation does business as Liberty Mutual, Liberty Mutual Insurance
or Liberty Mutual Group.

below, this Court cannot reach the merits of LM's other two assignments of error and we affirm the circuit court.

BACKGROUND[2]

GM Drywall engaged in the business of drywall installation. Based in Virginia, it also performed work in other states. GM Drywall obtained a worker's compensation insurance policy from LM, which ran from January 11, 2017 until January 11, 2018. When originally issued, the coverage was for Virginia only. In May 2017, LM issued an endorsement that added several states to the insurance coverage. In March 2018, within 75 days of the policy ending, Jane Cullen conducted an audit to determine GM Drywall's final premium. Cullen was employed by NEIS, Inc., a third-party firm regularly contracted by LM for the purpose of conducting audits. As a result of the audit, LM determined that GM Drywall overpaid its policy premiums and issued a refund check on March 14, 2018 for $2,627. An attached check stub stated "final audit" as the reason for the refund.

LM later identified a "red flag" after the March 2018 audit and refund, in that "the policy had resulted in no exposure but had six or seven states on the policy." On March 29, 2019, Kelly Lazur ("Lazur"), a forensic consultant employed by LM, conducted a second audit. In April 2019, LM notified GM Drywall that, because of the second audit, GM Drywall owed LM $16,206 in premiums on the policy. After receiving no payment in March 2020, LM commenced an action against GM Drywall for a warrant in debt to collect the unpaid premium.

---

[2] Under settled principles of appellate review, we state the facts in the light most favorable to GM Drywall, the prevailing party below. *Commonwealth v. Sawyer*, 84 Va. App. 547, 560 (2025).

The circuit court heard the case on February 14, 2024.[3]  At trial, the parties stipulated to the admission of the initial refund check and statement that LM sent to GM Drywall after the March 2018 audit.  The circuit court also admitted the insurance contract and allied documents as Exhibit 2.  Exhibit 2 contains a "Policy Holder Information Packet."  A letter in the packet states that the "package contained[ed] [GM Drywall's] Liberty Mutual . . . policy and instructions for its use."  The letter also explains that LM would "contact [policy holders] by phone or mail to make an appointment to conduct a final audit within 75 days of [their] policy expiration."  Under a commonly asked questions section, it notes that "a preliminary audit [may] be required" to "allow[] [LM] to verify the payroll estimates and classifications on the policy," so that "[i]f there is a material difference in the projected premium due, appropriate changes can be made early in the policy period."

Exhibit 2 also includes the "Worker's Compensation and Employers Liability Insurance Policy."  Pertinent to this appeal are Sections E and G of Part 5.  Part 5, Section E titled "Final Premium" states that

> The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy.  If the final premium is more than the premium you paid to us, you must pay us the balance.  If it is less, we will refund the balance to you.

Part 5, Section G titled "Audit" states, in part,

> [LM] may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium.

---

[3] The case was substantially delayed due to COVID-19 restrictions.

At trial, Lazur testified for LM. She explained LM's process for issuing worker's compensation policies and described the contract at issue here. Lazur explained that LM determined the initial "estimated premium" at the outset of the policy based on information provided by GM Drywall in its insurance application.

Lazur testified that the March 2018 audit report showed no labor risk exposure for GM Drywall except "clerical office exposure." GM Drywall objected on hearsay grounds, which the circuit court sustained pending admission of the 2018 audit report. LM attempted to lay a foundation for the report, and then renewed its motion to admit the audit into evidence. GM Drywall again objected on hearsay grounds. The circuit court queried LM as to whether a sufficient foundation existed for the audit's admission. Although Cullen—the auditor who prepared the March 2018 audit report—did not testify, LM had sought to admit her report under Virginia Rule of Evidence 2:803(6)'s business records exception. Relying on *Frank Shop v. Crown Central Petroleum Corp.*, 261 Va. 169 (2001), the circuit court declined to admit the report, in part because it had been prepared not by LM but by a third-party contractor. *Id.* at 176 (holding the business records exception "deals with records made, and not merely kept, in the regular course of business"). LM made no further proffer as to the contents of the first audit report and resumed its examination of Lazur.

At the end of LM's evidence, GM Drywall moved to strike. GM Drywall argued that the initial audit conducted by Cullen had been completed within 75 days of the expiration of the policy of insurance and was, therefore, the final audit that resulted in a credit to GM Drywall. LM countered that the March 2018 audit was not the final audit because the insurance contract contemplated multiple audits and specified a period of three years from the end of coverage in which LM could conduct them. LM also asserted that the premium issued after the first audit was

- 4 -

not the final premium because the final premium must be based on GM Drywall's actual labor risk exposure, which was not known until completion of the second audit.

The circuit court granted GM Drywall's motion to strike. The circuit court distinguished between the policy information packet in Exhibit 2, in which LM notified its customers that it would contact them and arrange "to conduct a final audit within 75 days of [their] policy expiration," from pages 1 through 8 of the policy itself. The circuit court found that Paragraph G of "the contract clearly provide[d] for" multiple "audits"—*plural*—to ascertain the final premium. However, Paragraph E, governing the final premium itself, refers to a final premium in the *singular*. The circuit court concluded that the contract permitted LM to conduct multiple audits to ascertain the final premium within the prescribed three years after the expiration of the policy but provided for only *one* determination of the final premium. In other words, having sent a refund check "classified that as the final premium amount that was due and owing" to GM Drywall, LM could not take a second "bite[] at the apple" by performing another audit to revisit the final premium it had previously established. Having so found, the circuit court entered a final order granting GM Drywall's motion to strike, and this appeal followed.

ANALYSIS

LM raises three assignments of error. First, LM argues that "[t]he [c]ircuit [c]ourt erred in granting GM Drywall's motion to strike LM Insurance's proof and dismiss the case after the close of LM Insurance's proof at trial," because "LM Insurance made a prima facie showing that it was owed a warrant in debt," and "the [c]ircuit [c]ourt did not construe the facts and all reasonable inferences arising therefrom in the light most favorable to it." Second, LM contends that the circuit court misinterpreted the contract by allowing "information in the literature that accompanied the insurance policy to overrule the specific language of the policy itself." Third, LM asserts that "[t]he [c]ircuit [c]ourt erred in refusing to admit into evidence [the March 2018] audit report, which was a

business record that LM Insurance relied upon in completing its subsequent audit." For the reasons below, this Court affirms the circuit court as to the first issue and does not reach the merits of LM's remaining assignments of error.[4]

I. The circuit court did not err in granting GM Drywall's motion to strike.

"In considering a motion to strike for failure to establish a prima facie case, the [circuit] court was required to view the facts in the light most favorable to" the party against whom the motion was directed "and to draw all fair inferences therefrom." *Baysden v. Roche*, 264 Va. 23, 25 (2002) (citing *Hadeed v. Medic-24, Ltd.*, 237 Va. 277, 285-86 (1989)). "That same standard is applicable to our review of the decision of the [circuit] court granting the motion to strike." *Id.* (citing *Washburn v. Klara*, 263 Va. 586, 561 (2002)).

The evidence establishes that LM conducted an audit using a third-party contractor in March 2018. As a result of that audit, LM issued a check to GM Drywall for an overpayment titled "Final Audit." In 2019, LM sent GM Drywall the results of a second audit. The second audit was completed by LM auditor Lazur and reflected more than $200,000 in exposure during the contract period, including $186,492 for work conducted in Arizona. The audit concluded that GM Drywall underpaid its premium.

LM argues that the circuit court "did not view the evidence and any reasonable inferences in the light most favorable to LM Insurance" and asserts that the evidence showed "GM Drywall owed additional premium amounts under the . . . contract." Yet, LM's argument fails to point to any specific factual evidence that the circuit court failed to address, misconstrued, or improperly weighed. The circuit court granted GM Drywall's motion to strike on the premise that the

---

[4] "[J]udicial restraint dictates that we decide cases on the best and narrowest grounds available[.]" *Perkins v. Commonwealth*, 84 Va. App. 519, 531 (2025) (alterations in original) (quoting *Shifflett v. Hill*, 82 Va. App. 367, 379 n.12 (2024)). Because waiver is the best and narrowest ground available here, we do not address the merits of LM's second and third assignments of error.

contract provided for multiple "audits" (Section G) but only one "final premium" (Section E). After the first audit, LM sent GM Drywall a check captioned "final audit."

The circuit court determined that since the contract called for one final premium and LM issued a check for the final premium, LM could not get "two bites at the apple" and issue a second final premium. The court's interpretation of the contract was a question of law, not a question of fact. *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 188 (2016) (court's interpretation of on-site/off-site distinction in the royalty provision was not a question of fact for the jury). LM has not challenged the circuit court's interpretation of the contract. Instead, LM has only assigned error to the court's interpretation of the facts. Accordingly, LM's argument that that the circuit court failed to properly view the evidence in the light most favorable to LM lacks merit.

II. LM waives its second assignment of error by failing to address the ruling of the circuit court.

LM's second argument, that the circuit court improperly relied on language from the informational section, "misconstrues the [circuit] court's finding." *Wilson v. Wilson*, 25 Va. App. 752, 759 (1997). An assignment of error is insufficient if it "does not address the findings, rulings, or failures to rule on issues in the [circuit] court . . . from which an appeal is taken, or which merely states that the judgment or award is contrary to the law and the evidence." Rule 5A:20(c); *see also Maine v. Adams*, 277 Va. 230, 241-42 (2009) ("A party who asks [appellate courts] to consider whether a circuit court's holding was erroneous is required to assign error to the challenged holding so that it may be identified properly for [a reviewing court's] consideration." (citing Rule 5:17(c), the Supreme Court equivalent of this Court's Rule 5A:20(c))).

LM provided GM Drywall with a "Policyholder Information Packet," which was admitted as part of Exhibit 2 in the circuit court. The policy packet included an informational section that

provided a quick overview of the parties' expectations and contained language that LM "will contact [them] by phone or mail to make an appointment to conduct a final audit within 75 days of [their] policy expiration." LM argues that the court relied on the language in the informational section when it noted that "both audits were not conducted within 75 days of the policy's end."

Yet, far from prioritizing this language over the terms of the actual contract, the circuit court held that this language was *not* part of the contract. The court described it as "kind of a boilerplate" offered to orient LM's customers as to "what [they] can expect from [their] insurance" rather than "the actual four corners of the contract itself." The court's ruling makes this point clear. The paragraph that LM alleges the circuit court gave unwarranted precedence states that LM "will . . . make an appointment to conduct *a final audit* within 75 days of your policy expiration," singular. (Emphasis added). However, in its ruling, the circuit court observed that "[t]he argument essentially is whether or not *multiple audits* can be conducted, *which I think the contract clearly provides for*." (Emphases added). Thus, the circuit court did not give precedence to the "informational section" over the terms of the contract. *See Am. Spirit Ins. Co. v. Owens*, 261 Va. 270, 275 (2001) ("[W]here the terms of the contract are clear and unambiguous, [courts] will construe those terms according to their plain meaning. 'Additionally, [courts] will not insert by construction, for the benefit of a party, a term not express in the contract.'" (quoting *Lansdowne Dev. Co. v. Xerox Realty*, 257 Va. 392, 400 (1999))).

LM conceded at circuit court that "[c]ontracts are not formed only by signature of two parties on a single document," but can be formed by "multiple documents like in this case." LM argued that the contract consists of the application form that GM Drywall submitted, as well the policy issued. GM Drywall argued that the informational "boilerplate" section also formed part of the contract. LM opposed GM Drywall's interpretation, asserting that "the first 1 through 8 pages is

sort of common questions, informational section written a little bit more in layman's terms." The circuit court agreed with LM.

Yet LM claims that "the court relied on that language in noting that both audits were not conducted within 75 days of the policy's end" and that the circuit court erroneously "conclud[ed] that by labeling the first audit a 'final audit,' LM Insurance forfeited the right to seek amounts properly due as premiums following the second audit," thereby "effectively render[ing] the language permitted audits—plural—within three years of the policy's term as superfluous." But the circuit court never endorsed the 75-day period. Nor did the circuit court rule that by conducting the first audit, LM forfeited the right to conduct subsequent audits. The circuit court acknowledged that the contract contemplated multiple audits but construed the contract as barring further audits after LM's premium overpayment refund had been remitted to GM Drywall. The circuit court explained that "the fact that [LM] sent this final audit report, they mailed the check to -- classified that as the final premium amount that was due and owing that was then refunded to [GM Drywall], that the contract needs to be construed in that manner."

We "do not consider" assignments of error that "do not address a ruling made by the circuit court." *Teleguz v. Commonwealth*, 273 Va. 458, 471 (2007). Appellants waive arguments when they fail to address the "basis upon which" the circuit court made its ruling. *Martin v. Lahti*, 295 Va. 77, 88-89 (2018). Litigants may not recast a circuit court's ruling and seek reversal on that reframed issue while avoiding the actual basis and ground of the underlying judgment. *See id.*; *Teleguz*, 273 Va. at 471.

The circuit court did not prioritize the introductory section over the terms of the contract. As LM recasts the circuit court's ruling, its second assignment of error is waived.[5]

_____

[5] LM also opines that "allow[ing] such a decision to stand will open the door for future fraud against insurance companies if insurers are bound by initial audit conclusions even if they subsequently learn that insureds did not fully and accurately provide required information to the

III. LM waived its argument that the March 2018 audit was improperly excluded.

"In Virginia, when '[evidence] is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer.'" *Ray v. Commonwealth*, 55 Va. App. 647, 649 (2010) (quoting *Whittaker v. Commonwealth*, 217 Va. 966, 968 (1977)). "It is well established that a party who wishes to challenge the [circuit] court's exclusion of evidence on appeal must provide a proffer of that evidence that is adequate to permit this Court to determine whether the lower court erred." *Smith v. Commonwealth*, 72 Va. App. 523, 541 (2020). To be sufficient, a proffer must allow us to examine both the admissibility of the proposed evidence and whether, even if admissible, its exclusion prejudiced the proffering party. *Molina v. Commonwealth*, 47 Va. App. 338, 368 (2006) ("Without such a proffer, [the appellate court] cannot determine the admissibility of the proposed [evidence], and, if admissible, whether the court's exclusion of the evidence prejudiced [the party]." (first and third alterations in original) (quoting *Holles v. Sunrise Terrace*, 257 Va. 131, 135 (1999))). "The failure to proffer the expected [evidence] is fatal to [LM's] claim on appeal." *Id.* at 367-68.

LM offered the March 2018 audit as its Exhibit 5 but the circuit court declined to admit it. LM did not proffer the *factual basis* for the report's finding that GM Drywall had no risk exposure beyond that stemming from clerical labor, nor is the March 2018 audit in the record for our review.[6]

---

insurer." LM failed to raise this argument in the general district court and subsequently the circuit court. Therefore, this issue is waived on appeal. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling.").

Further, LM's sweeping statement about protecting insurance companies from future fraud is a policy argument that we will not address. *See Passaro v. Va. Dep't of State Police*, 67 Va. App. 357, 367 (2017) ("The courts are limited to ascertaining compliance with constitutional provisions, statutes, regulations, and judicial decisions. Therefore, any determination that should properly be categorized as an issue of fact, policy, or procedure is outside the scope of judicial review.").

[6] Per Rule 5A:7(a)(3), "the record on appeal from the [circuit] court" includes "each exhibit offered in evidence, whether admitted or not."

"The Rules and case law are clear: it is the responsibility of an appellant to provide us with a record sufficient to allow us to reach his or her assignments of error," and "[a]ppellants who fail to do so proceed at their own peril." *Browning v. Browning*, 68 Va. App. 19, 31-32 (2017). LM's failure to include the rejected audit report in its appeal, and failure to proffer the contents of its findings, leaves this Court with an insufficient record to determine whether the circuit court erred in excluding the audit report. *See Smith*, 72 Va. App. at 541 ("It is well established that a party who wishes to challenge the [circuit] court's exclusion of evidence on appeal must provide a proffer of that evidence that is adequate to permit this Court to determine whether the lower court erred."). As a result, this Court cannot reach the merits of this assignment of error.

CONCLUSION

For the foregoing reasons, this Court affirms the circuit court's judgment.

*Affirmed.*